**IN THE SUPREME COURT OF MISSISSIPPI**

**NO. 1999-KA-01488-SCT**

*JAMES EARL SHARP*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/26/1999 |
| TRIAL JUDGE: | HON. LEE J. HOWARD |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | THOMAS L. KESLER |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:   SCOTT STUART |
| DISTRICT ATTORNEY: | FORREST ALLGOOD |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 05/24/2001 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 6/14/2001 |

**BEFORE PITTMAN, C.J., COBB AND DIAZ, JJ.**

**DIAZ, JUSTICE, FOR THE COURT:**

¶1. James Earl Sharp was convicted in the Lowndes County Circuit Court for the sale of cocaine. Sharp was also found to be a habitual offender under Miss. Code Ann. § 99-19-83 and thus was sentenced to "life imprisonment, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation." Miss. Code Ann. § 99-19-83 (2000). Sharp appeals the conviction and sentence contending that the trial court erred by (1) denying his motion to dismiss for failure to have a speedy trial and (2) refusing several proposed jury instructions. In addition, Sharp claims that (3) his counsel was ineffective and suffered a conflict of interest which denied Sharp due process of law.

**FACTS**

¶2. Sharp was initially charged with two counts of the sale of cocaine. The charges stem from a sting operation in which Sharp was videotaped and audio recorded selling cocaine to undercover agents. Although Sharp was later held for additional obstruction of justice and kidnaping charges, this appeal arises solely from the trial for the sale of cocaine. Since Sharp's appeal deals largely with a speedy trial claim, the applicable facts revolve around the procedural posture of the case and are as follows:

| Date | Event |
|------|-------|
| 7-24-97 | Sharp arrested |
| 11-19-97 | Waived arraignment |
| 2-10-98 | First trial date |
| 2-24-98 | Agreed order for continuance |
| 4-?-98 | Sharp writes Mississippi Bar complaining about attorney, Walters |
| 4-22-98 | Walters moves to withdraw as counsel |
| 5-12-98 | Burdine appointed as new defense counsel |
| 5-14-98 | Second trial date |
| 5-29-98 | Master Order continuance "for good cause" issued |
| 8-25-98 | Third trial date |
| 9-4-98 | Master Order continuance "for good cause" issued |
| 11-24-98 | Sharp files pro se motion to dismiss |
| 12-3-98 | Defense (Burdine) files continuance for "additional time to review" |
| 1-14-99 | Sharp files second pro se motion to dismiss |
| 1-20-99 | Kesler (as new counsel) moves for discovery |
| 2-17-99 | Fourth trial date |
|  | Defense (Kesler) files continuance "to prepare for trial" |
| 5-20-99 | Sharp files affidavit rejecting all plea agreements and negotiations |
| 5-24-99 | Fifth trial date |
|  | State continuance due to ill witness |
| 8-19-99 | Sixth trial date, but no trial because judge sitting on civil trial |
| 8-26-99 | Seventh and actual trial date |
|  | Defense files consolidated motion to dismiss for lack of a speedy trial |
| 9-1-99 | Motion is denied |

¶3. The two other points raised by Sharp deal with specific occurrences during the trial and for brevity, will be described as they are discussed.

## DISCUSSION

### I. WHETHER SHARP'S MOTION TO DISMISS FOR FAILURE TO HAVE A SPEEDY TRIAL SHOULD HAVE BEEN SUSTAINED.

¶4. A defendant in a criminal case has a right to a speedy trial, guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and by Article 3, § 26 of the Mississippi Constitution. *Humphrey v. State*, 759 So. 2d 368, 375 (Miss. 2000). In addition, Miss. Code Ann. § 99-17-1 (2000) creates a statutory right to a speedy trial. Although Sharp's brief only alleges a violation of his statutory right (the 270-day rule), the original motion from which this appeal arises argued that all aspects of Sharp's

speedy trial right had been violated. Therefore, it is appropriate that the issue be examined from both legal standpoints. Thus, Sharp's case must be tested under both the 270-day rule and the four-factor balancing test as laid out by the U.S. Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 2192, 33 L. Ed. 101 (1972). *Handley v. State*, 574 So. 2d 671, 674 (Miss. 1990). Alleged speedy trial violations are examined and determined on a case-by-case basis due to the factual specifics of each action. *McGhee v. State*, 657 So. 2d 799, 802 (Miss. 1995). "We are mindful indeed that no one factor is dispositive of the question. Nor is the balancing process restricted to the *Barker* factors to the exclusion of any other relevant circumstances." *Id.* Another factor necessitating a dual examination is that merely because a particular factual situation complies with the 270-day rule does not necessarily mean that the constitutional requirement has been met. *Flores v. State*, 574 So. 2d 1314, 1321 (Miss. 1990).

## THE STATUTORY RIGHT

¶5. The 270-day rule analysis is very fact specific and hinges upon which side (prosecution or defense) caused the delays. Section 99-17-1 states that "[u]nless good cause be shown, and continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned." Miss. Code Ann. § 99-17-1 (2000). Thus, the reason for the delay is as important as who is responsible. The first step is to calculate the total number of days between arraignment (the statute clearly states that is when the right attaches) and the actual trial. For this purpose, "[t]he date of arraignment is not counted but the date of trial is and weekends are counted unless the 270th day is a Sunday." *Johnson v. State*, 756 So. 2d 4, 11 (Miss. Ct. App. 1999) (citing *Adams v. State*, 583 So. 2d 165, 167 (Miss. 1991)). According to this rule, Sharp was tried 644 days after arraignment. At first blush, this seems like an exorbitant delay for someone to be brought to trial. However, the second step in determining whether the 270-day rule has been complied with is to consider each delay separately, because only those delays attributable to the State count toward the 270 days. *Baine v. State*, 604 So. 2d 258, 264 (Miss. 1992).

¶6. The first block of time to be considered is from arraignment (11-19-97) to the first date set for trial (2-10-98). "The necessary time for the accused and his counsel to prepare his trial must necessarily be left largely to the sound discretion of the trial judge, bearing in mind the facts and circumstances of the particular case." *Wiley v. State*, 582 So. 2d 1008, 1012 (Miss. 1991); *Gilmore v. State*, 225 Miss. 173, 189, 82 So. 2d 838, 846 (1955). Accounting for 82 days, this time does not appear to be overly lengthy for preparation for a drug related offense and therefore does not count against either the State or the defendant.

¶7. An agreed motion for continuance was granted February 24, 1998, and a second trial date was set to begin May 14, 1998. Since the motion for continuance was joined by Sharp, it is dealt with as if it were sought by the defense. As such, continuances sought by the defense are charged against them. *Herring v. State*, 691 So. 2d 948, 953 (Miss. 1997); *Jasso v. State*, 655 So. 2d 30, 35 (Miss. 1995). Therefore, this delay of 79 days cannot be charged against the State. In addition, the continuance was granted for the stated reason that the trial court was busy and lacked time to hear the matter. A congested docket is considered "good cause" for delay if the continuance is actually granted for that reason. *Humphrey*, 759 So. 2d at 377; *Johnson v. State*, 666 So. 2d 784, 791 (Miss. 1995), *abrogated on other grounds*, *Hennington v. State*, 702 So. 2d 403, 414-15 (Miss. 1997); *State v. Harrison*, 648 So. 2d 66, 69 (Miss. 1994), *abrogated on other grounds*, *Walton v. State*, 678 So. 2d 645, 648 (Miss. 1996). Also, in his denial of Sharp's motion to dismiss, the trial judge further indicated that the court was indeed quite busy at the time of the continuance.

¶8. During this time (2-10-98 to at least 4-28-98), plea negotiations were going on. It does not matter that Sharp did not take a plea; the hearing transcripts show that he was interested in a plea if one lenient enough had come along. In fact, due to his changing attorneys, plea negotiations apparently continued until May 1999 when Sharp executed an affidavit rejecting all plea agreements and negotiations. Time associated with an earnest attempt at plea negotiations will not be charged against the State. *Taylor v. State*, 672 So. 2d 1246, 1259 (Miss. 1996); *Johnson*, 666 So. 2d at 792.

¶9. The May 1998 trial was continued per the master order of the trial court "for good cause." However, the Court has held that orders stating "[f]or good cause shown the following numbered criminal cases are continued to the next regular term of this court" (which is what occurred here) without more does not show that actual "good cause" existed and will not toll the 270-day count. *Vickery v. State*, 535 So. 2d 1371, 1375 (Miss. 1988). Although this sort of continuance generally would count against the State, extenuating circumstances exist in the present case. Sharp and his then attorney, Armstrong Walters, were having difficulties that resulted in Sharp writing the Mississippi Bar and Walters withdrawing from the case. Sharp's next attorney, Richard Burdine, was appointed a mere two days before the May 1998 trial date. In his order denying defense counsel's motion to dismiss, the trial judge stated that the master order continuance was granted on the basis that Burdine would need time to prepare. Furthermore, "[a] delay caused by the withdrawal of the defendant's attorney which entails allowing the new attorney a reasonable time to become familiar with the case and prepare for trial cannot be weighed against the State because it is beyond the State's control." *Johnson*, 666 So. 2d at 792 (quoting *Wiley*, 582 So. 2d at 1012). Since the trial judge gave his reason in addition to the "for good cause," "finding of good cause for delay is a finding of ultimate fact and should be treated on appeal as any other finding of fact; it will be left undisturbed where there is in record substantial credible evidence from which it could have been made." *Walton*, 678 So. 2d at 648. The 88-day delay from May 29, 1998, to August 25, 1998, is not charged against the State.

¶10. Another master order continuance "for good cause" was granted on September 4, 1998. The difference between this continuance and the previous one is that the trial judge did not attempt to justify this delay. Therefore, the period between September 4, 1998, and December 3, 1998, should be charged against the State. The prosecution argues that the 270-day clock was being tolled at this time due to Sharp's filing a pro se motion, and the general rule is that motions toll the clock until they are ruled upon. *Winder v. State*, 640 So. 2d 893, 894 (Miss. 1994). According to the State, the 270-day clock therefore would be tolled until September 1, 1999, when the trial judge finally ruled upon the consolidated motions to dismiss. Although there is some authority to support this argument, we disagree with the State's argument. After all, Sharp had counsel, and since the trial court likely did not consider the pro se motion as appropriate, it should not be used against him. Thus, this 90- day delay should be charged against the State.

¶11. The next block of delay runs from December 3, 1998, until February 17, 1999, and stems from a continuance filed by Sharp for "additional time to review." Again, continuances attributable to the defense will not be held against the State. *Herring*, 691 So. 2d at 953; *Jasso*, 655 So. 2d at 35. Sharp's present attorney, Thomas L. Kesler, casts some doubt upon Burdine's, Sharp's then attorney, motivations; yet, they do not defeat the fact that this delay was caused by Sharp (in fact, Kesler frustratingly admits as much). This 76-day delay is not charged against the State.

¶12. At the next date for trial (2-17-99), Sharp once again had new representation, Kesler. Again, new counsel must be afforded an opportunity to prepare properly. *Wiley*, 582 So. 2d at 1012; *Gilmore*, 82 So. 2d at 846. In addition, Kesler, on Sharp's behalf, moved for and was granted another continuance "to

prepare for trial." As has already been stated, a defense continuance will not be charged against the State. *Jasso*, 655 So. 2d at 35. Another 96-day delay is attributable to Sharp.

¶13. The last block of delay spans May 24, 1999, to the time of the trial on August 26, 1999. This delay is due in large part to a motion for continuance filed by the prosecution due to a material witness being ill and unable to attend court. The trial judge and Sharp seem to assume that this delay should be weighed against the State, and the prosecution proceeds on the idea that the clock has been tolled since Sharp's first pro se motion to dismiss. In fact, there is an alternate view neither has considered. Section 99-17-1 states that "unless good cause be shown, and a continuance duly granted by the court" the 270-day clock runs. Miss. Code Ann. § 99-17-1. In addition, a judge's finding of good cause is considered a matter of ultimate fact. *Walton*, 678 So. 2d at 648. The continuance was granted due to the absence of a material witness; this reasoning seems as much "for good cause" as any of those previously discussed. Thus, the prosecution's continuance had good cause, and the 270-day clock is tolled. Also, the final delay of a week is attributable to a congested docket and a civil case which had run long. Again, this sort of delay is not counted against either the State or the defendant, as discussed earlier. *Harrison*, 648 So. 2d at 68. Whether this delay is charged against the State matters little since the prosecution is within the 270-day rule with or without this 94-day delay.

¶14. Five-hundred and fifteen days are attributable to Sharp's continuances and changing of attorneys. This leaves the State responsible for a mere 129 days, well within the 270-day limit. Thus, Sharp's statutory right to a speedy trial has not been violated.

## THE CONSTITUTIONAL RIGHT

¶15. Although complying with the 270-day rule is suggestive of whether the constitutional speedy trial right has been violated, it is not dispositive. *Flores*, 574 So. 2d at 1321. There are different considerations. First, the constitutional right to a speedy trial attaches at the time of arrest rather than arraignment. *Humphrey*, 759 So. 2d at 375; *De La Beckwith v. State*, 707 So. 2d 547, 565 (Miss. 1997). Whereas the 270-day analysis is an exact mathematical computation of days, the constitutional right is a weighing test based upon the *Barker* factors, which "are (1) the length of delay, (2) the reasons for the delay, (3) assertion of the right to a speedy trial, and (4) prejudice to the defense." *Herring*, 691 So. 2d at 955 (citing *Barker*, 407 U.S. at 529, 92 S.Ct. 2182). Furthermore, "[a] delay in excess of eight months between arrest and trial establishes 'presumptive prejudice' sufficient to trigger analysis under Barker." *Skaggs v. State*, 676 So. 2d 897, 900 (Miss. 1996). Seven hundred thirty-one days (time from arrest until trial) certainly exceeds the eight-month threshold. Therefore, Sharp's case must be analyzed under the *Barker* four-factor test.

### 1. Length of delay

¶16. As previously stated, the considerable delay of 731 days is a strong indication that there may have been a violation of Sharp's constitutional right to a speedy trial. This factor weighs in Sharp's favor.

### 2. Reason for delay

¶17. This factor was extensively examined under the discussion of Sharp's statutory right to a speedy trial. Nearly all of the delays are attributable to Sharp, and almost none fall within the State's responsibilities. It is well-settled law in the State of Mississippi that when most of the delay in a case is attributable to the many

continuances and changing of attorneys by the defense, this factor will weigh against the defense in the balancing test. *Elder v. State*, 750 So. 2d 540, 543-44 (Miss. Ct. App. 1999). Therefore, this factor weighs against Sharp.

### 3. Assertion of right

¶18. The State bears the burden of bringing a defendant to trial. *Ross v. State*, 605 So. 2d 17, 24 (Miss. 1992); *Flores*, 574 So. 2d at 1321. However, the assertion of one's right to a speedy trial weighs more heavily in one's favor than not asserting it. *Johnson*, 666 So. 2d at 793; *Jaco v. State*, 574 So. 2d 625, 632 (Miss. 1990). As the trial judge rightly pointed out when he denied Sharp's motion, Sharp did not assert his right until very late in the process, and the defense asked for and was granted two continuances after Sharp attempted to assert his right. Although this does not directly harm Sharp's appeal, the factor still does not weigh in his favor.

### 4. Prejudicial effect of the delay

¶19. The only prejudicial effect Sharp alleges was caused by the delay was his incarceration for nearly two years without a trial. Generally, proof of prejudice entails the loss of evidence, death of witnesses, or staleness of an investigation. "The possibility of impairment of the defense is the most serious consideration in determining whether the defendant has suffered prejudices as a result of delay." *Elder*, 750 So. 2d at 545 (citing *Hughey v. State*, 512 So. 2d 4, 11 (Miss. 1987)). In the present case, these things did not change; the trial unfolded the same as if it had been held much earlier. As in the *Elder* case, "the entire drug transaction was recorded on a video tape that was viewed by the jury, [Sharp's] potential defenses were limited, and no real impairment can be claimed in this case." *Id.* In addition, this Court has held that incarceration alone is not enough to warrant a reversal. *McGee v. State*, 608 So. 2d 1129, 1130 (Miss. 1992); *Ross*, 605 So. 2d 17. Also, although the facts are not completely clear, it appears that Sharp only has himself to blame for his incarceration. From what can be gathered, Sharp was arrested on the drug sale charges, released on bond, kidnaped the State's witness, was rearrested, and held without bail for the safety of the witness. In addition, Sharp is responsible for the bulk of the delay for which he now claims prejudice and cannot argue against them now. *Kolberg v. State*, 704 So. 2d 1307, 1319 (Miss. 1997). Thus, his entire argument is unconvincing.

### 5. Conclusion

¶20. We find that the trial court was correct in its determination. Sharp's delay was almost wholly attributable to his or his attorney's actions. He should not be allowed to delay matters and then claim that those delays prejudiced him, violating his constitutional right to a speedy trial. Thus, we hold that Sharp's constitutional right to a speedy trial has not been violated.

## II. WHETHER INSTRUCTIONS D-4 AND D-5 WERE PROPERLY REFUSED.

¶21. Sharp raises these issues in a pro se brief filed one day after the State's brief. While Sharp has a constitutional right to be heard, there was no prior notice of an intent to file a pro se brief, and the filing appears to be untimely. Moreover, the argument regarding the instruction is unsupported by authority, relieving this Court of any obligation to address it. *Edwards v. State*, 737 So. 2d 275, 295 (Miss. 1999). Nevertheless, in the absence of any motion to strike, we address the new point raised out of an abundance of caution.

¶22. Specifically, Sharp challenges the refusal of his proposed instructions D-4 and D-5. Matters become a little confused because there are two D-5s in the record and discussed in the trial transcripts, but both were refused. D-4 was an expert witness instruction,[(1)] and the trial court properly refused it. The State's expert witness offered uncontradicted evidence, and the jury had already been instructed on the weight of witness testimony. Thus, D-4 was unnecessary and properly refused. The first D-5 regarded the need for certainty from the jury of the identity of the criminal. Since the jury had already been instructed on the necessary elements of the crime, a reemphasis of identity was redundant, making refusal of this instruction proper. The second D-5 was an attempt at a confidential informant instruction. However, it was confusingly worded, and the fact that the witness was compensated had already been revealed to the jury. Therefore, all three challenged refusals were proper and well considered by the trial court. Sharp's allegations lack merit.

### III. WHETHER THERE EXISTED A CONFLICT OF INTEREST AND INEFFECTIVE ASSISTANCE OF COUNSEL VIOLATING SHARP'S RIGHT TO DUE PROCESS OF LAW.

¶23. Sharp's final argument suffers from the same deficiencies as his instructions argument. This issue was not raised in Sharp's first brief, was contained in an improper pro se supplemental brief, and was not supported by any relevant authority. This entire argument is procedurally barred. *Edwards*, 737 So. 2d at 295. However, to insure fairness, it will be discussed briefly.

¶24. Sharp first alleges that Kesler was representing him under a serious conflict of interest. The presence of actual conflict is difficult to ascertain, but the gist of Sharp's allegation is that Kesler had a role in prosecuting one of Sharp's former convictions. In fact, there is some evidence in the trial transcript that this charge is true. The situation is unusual and a bit curious, but Sharp failed to raise the issue until now and took no other action. Regardless, Sharp pled guilty to that offense, and there is no other evidence of bias or conflict. "[P]rejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" *Smith v. State*, 666 So. 2d 810, 812-13 (Miss. 1995) (citing *Cabello v. State*, 524 So. 2d 313, 316 (Miss. 1988)). Also, "possible conflict does not continue to bar the attorney from representing [Sharp] in a later and unrelated case." *McCaleb v. State*, 743 So. 2d 409, 411 (Miss. Ct. App. 1999). Since Sharp failed to show how Kesler's alleged conflict of interest affected his case, Sharp failed to prove that a conflict denied him due process.

¶25. Sharp also alleges ineffective assistance of counsel for a number of actions or inactions by Kesler, including no closing argument and lackluster cross-examination. To establish ineffective assistance of counsel, the client must prove that his counsel's performance was deficient and that the deficiency prejudiced the defense of the case. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed. 2d 674 (1984); *Gary v. State*, 760 So. 2d 743, 756 (Miss. 2000); *McCaleb*, 743 So. 2d at 411. Sharp failed to demonstrate either; he merely listed where he felt Kesler was lacking and left the matter alone. Thus, there is no proof that Sharp was denied due process of law.

### CONCLUSION

¶26. Sharp raised three issues asking for reversal of his conviction and sentence. As has been illustrated, all three of these arguments lack merit.

¶27. Over 600 days in jail prior to trial is a considerable amount of time; however, Sharp only has himself

to blame. It is because of the many continuances filed on his behalf and the ever-changing representation that Sharp's trial was so late in coming about. After mathematical calculations and weighing of the *__Barker__* factors, it has been shown that Sharp's rights to a speedy trial have not been violated. Since those delays are attributable to him, Sharp should not be rewarded for them. As such, the ruling of the trial court is affirmed.

¶28. As for the other two issues, they are clearly procedurally barred, as well as without evidence or authority. Therefore, those rulings are affirmed. For these reasons, we affirm the conviction and sentence imposed by the Lowndes County Circuit Court.

¶29. **CONVICTION OF THE SALE OF COCAINE AND SENTENCE OF LIFE IMPRISONMENT AS A HABITUAL OFFENDER WITHOUT THE POSSIBILITY OF PAROLE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.**

**PITTMAN, C.J., BANKS AND McRAE, P.JJ., SMITH, MILLS, WALLER AND COBB, JJ., CONCUR. EASLEY, J., NOT PARTICIPATING.**

1. D-4 read as follows: "Testimony from witnesses, accepted by the Court as expert witnesses, is allowed to assist the Jury in deciding factual issues. The Jury may believe all, part, or none of what any witness, expert or otherwise, testifies to."