902 So.2d 593 (2004)
Jack JONES, Jr., Appellant,
v.
STATE of Mississippi, Appellee.
No. 2003-KA-00470-COA.
Court of Appeals of Mississippi.
November 2, 2004.
Rehearing Denied February 22, 2005.
Certiorari Denied May 26, 2005.
*594 Mark Kevin Horan, Joseph Joshua Stevens, Chicago, IL, attorneys for appellant.
Office of the Attorney General by Jeffrey A. Klingfuss, attorney for appellee.
EN BANC.
IRVING, J., for the Court.
¶ 1. Jack Jones, Jr. was convicted of robbery after a jury trial in the Circuit Court of Lowndes County and sentenced as an habitual offender to life imprisonment in the custody of the Mississippi Department of Corrections. Feeling aggrieved by his conviction, Jones appeals *595 and asserts the following issues: (1) whether the trial court erred in failing to quash the habitual offender portion of the indictment, (2) whether the trial court erred in allowing the state to amend the indictment on the eve of trial to charge the defendant as an habitual offender under Mississippi Code Annotated § 99-19-83(3) (Rev.2000) whether the trial court erred in failing to conduct a mental competency hearing pursuant to Mississippi Uniform Circuit and County Court Rule 9.06, (4) whether the trial court erred in refusing the defendant twelve peremptory challenges to the jury pursuant to Mississippi Uniform Circuit and County Court Rule 10.01, (5) whether the trial court erred in overruling the defendant's motion to suppress both the single-suspect eyewitness and in-court identifications of the defendant, (6) whether the trial court erred in overruling the defendant's motion to dismiss the indictment against the defendant for denial of a speedy trial, (7) whether the trial court erred in invoking a sentence grossly disproportionate to the crime charged and constituting cruel and unusual punishment, and (8) whether the trial court committed plain error in refusing to give a requested defense instruction.
¶ 2. We reject each of the suggestions of error and affirm Jones's conviction and sentence.

FACTS
¶ 3. On the evening of October 8, 1999, Jack Jones, Jr. snatched the purse of Sara Moellenhoff while she was in the parking lot of Wal-Mart in Columbus, Mississippi. He ran to a white Chevrolet pickup truck in which he made his escape. Shortly after receiving a description of the assailant's truck from Moellenhoff, the police found a truck matching that description and made a traffic stop of the vehicle. The police immediately escorted Moellenhoff to the traffic stop where she identified Jones as the person who had snatched her purse.
¶ 4. Jones was subsequently indicted and arraigned for robbery. After a jury trial which commenced on November 21, 2002, Jones was convicted of robbery and later sentenced as an habitual offender to serve a term of life in the custody of the Mississippi Department of Corrections. This is his appeal from that conviction and sentence.

ANALYSIS AND DISCUSSION OF ISSUES

1. Quashing the Habitual Offender Portion of the Indictment
¶ 5. Jones argues that the circuit court erred in failing to quash the habitual offender portion of the indictment as void. He explains that the circuit court's order which amended his original indictment failed to include the language of "against the peace and dignity of the state" and therefore violates section 169 of the Mississippi Constitution. The original indictment concluded with the phrase, "against the peace and dignity of the state." Jones concludes that since the original indictment was amended to charge Jones as an habitual offender, the amendment was defective because of the omission of the required language. Citing McNeal v, State, 658 So.2d 1345 (Miss.1995), Jones concludes that the circuit court should have held that the habitual portion of his indictment was fatally defective, granted his motion to quash the indictment, and vacated his habitual offender sentence. The State counters that McNeal is not applicable and that the amendment to the indictment conformed with constitutional requirements.
¶ 6. We agree with the State that McNeal is not applicable to the case sub judice. In McNeal, the defendant challenged *596 the validity of his indictment as an habitual offender because the habitual portion was preceded by the language of "against the peace and dignity of the State of Mississippi." Id. at 1348-49. In fact, the part of the indictment charging McNeal as an habitual offender was on a separate page from the rest of the indictment. Finding that Section 169 of the Mississippi Constitution of 1890 requires an indictment to conclude with the language, "against the peace and dignity," our supreme court vacated the habitual charge against McNeal. Id. at 1350. In the case before us, the indictment was amended to charge Jones as an habitual offender. As previously stated, Jones's original indictment was proper, concluding with the required language. A separate order amended the indictment. There was no new indictment. Jones equates the separate order with the separate page in McNeal. The separate order stated that the indictment was amended to include the language charging Jones as an habitual offender. However, it did not state or indicate any point of insertion in the indictment, just that the indictment was amended to include the habitual offender language.
¶ 7. We have not been able to find a case addressing the exact question presented here, that is, whether an indictmentwhich has been amended by a court order but which order does not conclude with the language, "against the peace and dignity of the state"comports with the requirement of Section 169 of the Mississippi Constitution of 1890 that "all indictments shall conclude `against the peace and dignity of the state.'" Although we have found no authority, we need not resolve the issue today. It is sufficient to say that Jones never objected to the amended indictment on the ground upon which he now objects in his appellate brief. While he objected to the State's motion to amend the indictment and again raised the issue in his post-trial motion, he never questioned the legality of the amendment on the basis he now presents. The closest he came was his assertion in his post-trial motion that the indictment "was spliced together." He never explained what he meant by the phrase.
¶ 8. Rule 7.09 of the Uniform Circuit and County Court Rules permits the amendment of indictments to charge a defendant as an habitual offender. That is what was allowed by the trial judge. We find no merit in this issue.

2. Timing of the Amendment to the Indictment
¶ 9. Jones next argues that the circuit court's amendment caught him by surprise, prejudiced his ability to negotiate with the State regarding his potential sentence, and did not allow him sufficient time to prepare his defense concerning his prior convictions. The State counters that Jones had ample warning, notice, and opportunity to prepare his defense. We agree.
¶ 10. According to our perusal of the record, Jones was indicted for robbery on February 10, 2000. On May 20, 2002, the State filed its motion to amend the indictment to charge Jones as an habitual offender. On November 18, 2002, Jones filed his response to state's motion to amend the indictment. On the same day, the circuit court conducted a pre-trial hearing in which the judge heard the State's motion to amend. As a result of this hearing, the court issued an order amending the indictment. Jones's trial was commenced on November 21, 2002. Since Jones had more than six months notice of the State's intention, it is hard to understand how he did not have sufficient time to investigate the predicate offenses *597 or prepare his defense. While the State was not authorized until the eve of the trial to proceed with the amendment, there was no reason to believe that the State had abandoned its intentions to prosecute Jones as an habitual offender. Consequently, we find no merit in this issue.

3. Mental Competency Hearing
¶ 11. Jones argues that the trial court erred when it failed to conduct a mental competency hearing pursuant to Mississippi Uniform Circuit and County Court Rule 9.06 after ordering him to undergo a competency examination at the Mississippi State Hospital. He explains that the court, instead of conducting the hearing, entered an order sua sponte that he was competent to stand trial. According to Jones, the court's error prevented him from presenting evidence to rebut the evaluation filed by the Mississippi State Hospital. The State argues that the circuit court had sufficient information to determine that Jones was competent upon receiving the mental evaluation from the hospital.
¶ 12. Rule 9.06 states in part:
If before or during trial the court, of its own motion or upon motion of an attorney, has reasonable ground to believe that the defendant is incompetent to stand trial, the court shall order the defendant to submit to a mental examination by some competent psychiatrist selected by the court in accordance with § 99-13-11 of the Mississippi Code Annotated of 1972.
After the examination the court shall conduct a hearing to determine if the defendant is competent to stand trial. After hearing all the evidence, the court shall weigh the evidence and make a determination of whether the defendant is competent to stand trial.
¶ 13. In Howard v. State, 701 So.2d 274, 280-81 (Miss.1997), our supreme court commented on the import of the rule as follows:
This provision makes clear the trial court's obligation to order a competency hearing under certain circumstances. As this Court said in Conner v. State, 632 So.2d 1239 (Miss.1993), "the real question, therefore, is whether `reasonable grounds' existed to believe that [the accused] was insane. If so, then Rule 4.08 (now Rule 9.06) mandates a competency hearing. The determination of what is `reasonable,' of course, rests largely within the discretion of the trial judge. He sees the evidence first hand; he observes the demeanor and behavior of the defendant." Id. at 1248. For purposes of reviewing a decision to forego a competency hearing, this Court has cited the test applied by the Fifth Circuit Court of Appeals: "Did the trial judge receive information which, objectively considered, should reasonably have raised a doubt about defendant's competence and alerted him to the possibility that the defendant could neither understand the proceedings, appreciate their significance, nor rationally aid his attorney in his defense?"
¶ 14. Counsel for Jones filed a motion for mental examination or in the alternative for a reduction of bond. On May 12, 2000, the trial court entered an order for mental evaluation and treatment, directing that Jones be evaluated by the Mississippi State Hospital at Whitfield. On February 13, 2002, the hospital filed its mental evaluation report on Jones, finding him to be mentally competent to stand trial. On the same date, the court entered an order, sua sponte, noting the hospital's findings and setting Jones's case for trial. During a November 20, 2002 motion hearing, counsel for Jones made remarks concerning Jones's competency to stand trial; however, *598 the court found that counsel for Jones had not raised the issue by appropriate motion, that counsel for Jones had not given sufficient notice to the State regarding the matter, and that the only evidence it had before it was the medical examination from the hospital.
¶ 15. It is for the trial judge to determine whether a defendant's conduct justifies a competency hearing. The trial judge was in the best position to make a determination whether there existed a reasonable ground for the court to order a competency hearing on its own initiative. After observing Jones's actions and demeanor both before and during the trial, the judge did not find it necessary to order a competency hearing. Nothing in this record indicates that the decision was an abuse of the trial judge's discretion.

4. Peremptory Challenges
¶ 16. Jones next argues that the trial court erred in refusing the defendant twelve peremptory challenges pursuant to Mississippi Uniform Circuit and County Court Rule 10.01. Acknowledging that the circuit court relied on Yates v. State, 396 So.2d 629 (Miss.1981) in finding that he was only entitled to six peremptory challenges, Jones asserts that a distinction exists between the requirements of Yates and Rule 10.01. He argues that the wording of Yates and Rule 10.01 are different and points out that our supreme court adopted Rule 10.01 after Yates. Jones, therefore, concludes that he was entitled to twelve peremptory challenges because he was facing potential life imprisonment upon being charged as an habitual offender and because Rule 10.01 requires that twelve challenges shall be given to the defendant "wherein the punishment may be death or life imprisonment." Citing Osborne v. State, 404 So.2d 545, 546 (Miss.1981), the State counters that the circuit judge did not err by refusing to grant Jones twelve peremptory challenges.
¶ 17. Rule 10.01 states in part:
In cases wherein the punishment may be death or life imprisonment, the defendant and the prosecution shall have twelve (12) peremptory challenges for the selection of the regular twelve jurors. These challenges may not be used in the selection of an alternate juror or jurors. In felony cases not involving the possible sentence of death or life imprisonment, the defendant and the prosecution shall have six (6) peremptory challenges for the selection of the twelve regular jurors.
¶ 18. The same arguments that Jones asserts here were articulated by the accused in Osborne, a progeny of Yates. In that case, Osborne, the defendant, was convicted of carrying a concealed weapon after his conviction of two prior felonies. Id. at 545. Because of his past felony convictions, Osborne was sentenced under the habitual offender statute, Mississippi Code Annotated section 99-19-83 (Rev.2000). Id. at 546. On appeal, Osborne contended that because the habitual offender statute subjected him to punishment of life imprisonment, he was charged with a capital offense, and thus, was entitled under Mississippi Code Annotated section 99-17-3 (Rev.2000) to twelve peremptory challenges. Osborne, 404 So.2d at 546. In response to Osborne's argument, our supreme court stated the following:
[I]n the present case the principal offense of carrying a concealed weapon after a felony conviction is not a capital crime and not an offense which entitles the defendant to twelve peremptory challenges. The jury only determines the guilt of the accused on the principal offense and does not consider the prior convictions which bring into consideration *599 the life sentence under the habitual offenders statute. The trial judge, in a separate hearing, determines the applicability of the habitual offenders statute and the sentencing. Thus, the special challenges to the jury allowed a defendant charged with a capital crime are not necessitated when the principal offense is noncapital. Thus, this assignment is without merit.
Id.
¶ 19. In the case sub judice, a jury found Jones guilty of robbery, a non-capital offense. See Miss.Code Ann. § 1-3-4 (Rev.1998), § 97-3-73 (Rev.2000). Therefore, because Jones's offense was noncapital, the statutory and rules provisions which provide extra peremptory challenges to the venire in capital cases were inapplicable. Jones was entitled only to the regular number of six peremptory challenges.

5. Suppression of In-court Identification
¶ 20. Jones argues that the trial court erred in overruling his motion to suppress Sara Moellenhoff's in-court identification of him because the in-court identification was tainted by the initial out-of-court identification. He explains that this procedure of identification was "so suggestive as to create the substantial likelihood of irreparable misidentification" of himself by the witness.
¶ 21. During a pretrial motion hearing, the court found that Jones seemed to desire the court to suppress any in-court identification of him by Moellenhoff because a lot of time had passed between the time of the incident and Jones's trial, because the police might show Moellenhoff photographs to refresh her memory before she testified, and because of the suggestive nature of allowing Moellenhoff to identify Jones as the culprit at a traffic stop less than an hour after she was robbed. The court also noted that Jones requested a judicial lineup to test whether Moellenhoff could identify Jones as the culprit. The court held that there was no such thing as a judicial lineup, that the court had not been presented with any evidence of a unconstitutionally suggestive or impermissible lineup, and that it would not allow the State to present photographs of Jones to Moellenhoff prior to her testimony.
¶ 22. Jones's contention here is wholly without merit as he failed to present any evidence of an improperly suggestive pretrial identification by Moellenhoff that would taint any subsequent identification at trial.
¶ 23. Jones further argues that the court erred by overruling his motion to prevent Moellenhoff from referring to any previous identifications of him during trial. He specifically takes issue with testimony that Moellenhoff identified him as the culprit when she confronted him at a traffic stop shortly after she was robbed at Wal-Mart.
¶ 24. During trial it was agreed to by both counsel that the State would not go into evidence of prior identifications unless the defense counsel attacked the witness's identification of the defendant. However, during cross-examination, defense counsel asked Officer Greggs, "[Y]ou never charged Levorn Williams[1] with any crime, did you?" Upon redirect examination, the State sought the court's permission to ask Officer Greggs why he did not charge Williams with a crime. The State made a proffer outside the presence of the jury wherein the officer responded that Moellenhoff had previously identified Jones, not *600 Williams, as the culprit. The State took the position that Jones had opened the door, through defense counsel's question, to allow Moellenhoff's previous identification of Jones into evidence. Jones objected to the testimony's admissibility, but the circuit court overruled his objection stating, "She's (Moellenhoff) already identified this defendant in court properly so and no one else." The testimony was subsequently allowed. Jones did not renew his objection when the testimony came in.
¶ 25. It appears to us that Jones did open the door for the admission of the testimony about which he now complains. Perhaps, that was not his intention, and there may have been other reasons why the officers did not charge Williams with the offense, but Moellenhoff's identification of Jones was certainly a valid reason for not charging Williams. We find no merit in this issue.

6. Denial of Speedy Trial
¶ 26. Jones argues that the trial court erred in overruling his motion to dismiss the indictment because he was denied both his constitutional and statutory right to a speedy trial. We address both the constitutional and statutory claim together as they are interrelated.
¶ 27. The record discloses the following pertinent dates:

 10-08-99 Arrest
 02-10-00 Indictment
 02-16-00 Arraignment, trial date set for 05/15/00
 05-12-00 Motion for mental examination filed by defendant
 05-12-00 Order for mental examination entered
 09-08-00 Master order of continuance
 12-08-00 Master order of continuance
 03-09-01 Master order of continuance
 09-06-01 Letter from State Hospital at Whitfield filed notifying the court that
 defendant did not provide information for mental exam
 09-08-01 Master order of continuance
 11-30-01 Order entered directing defendant to provide information to the State
 Hospital at Whitfield
 12-07-01 Master order of continuance
 01-07-02 Defense counsel's motion to withdraw filed
 01-22-02 Order directing State Hospital at Whitfield to conduct mental exam with
 limited information obtained from defendant entered
 02-13-02 Mental evaluation filed by the State Hospital at Whitfield & order entered
 setting trial for 02/26/02
 03-01-02 Agreed order of continuance entered setting trial for 05/20/02
 05-20-02 Motion to amend indictment filed by State
 05-23-02 Motion to dismiss for denial of speedy trial filed by defendant
 05-31-02 Order of continuance setting trial for 08/28/02 entered due to defense
 counsel's illness
 09-06-02 Order of continuance entered setting trial for 11/18/02 due to another civil
 trial setting
 11-18-02 Pretrial motions heard on trial date, order amending indictment, and order of
 continuance entered due to another trial setting
 11-20-02 Hearing on motion to dismiss for denial of speedy trial; order entered setting
 trial for 11-21-02
 11-21-02 Trial

Constitutional Right
¶ 28. In examining a constitutional challenge, there is no specified time *601 period that renders the delay unconstitutional. Instead we use a test set out by the United States Supreme Court in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). See Brengettcy v. State, 794 So.2d 987, 992(¶ 10) (Miss.2001). The four factors of the Barker test are: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) the prejudice to the defendant. Barker, 407 U.S. at 530, 92 S.Ct. 2182. No one factor is dispositive, and the balancing test is not restricted to the Barker factors. Other factors may be considered. Poole v. State, 826 So.2d 1222, 1228-29(¶ 18) (Miss.2002).
¶ 29. The first Barker factor is the length of delay. The relevant dates used to calculate the length of the delay are the arrest date and the trial date. Brengettcy, 794 So.2d at 992(¶ 11). Although all of the Barker factors are relevant for the balancing test, a delay of eight months or more is presumptively prejudicial. Id. (citing Smith v. State, 550 So.2d 406, 408 (Miss.1989)). Where the delay is not presumptively prejudicial, there is no need to review the remaining Barker factors. Id.
¶ 30. Jones was arrested on October 8, 1999, and his trial was on November 21, 2002. The length of the delay was approximate 37 months. Because this period of time is greater than eight months, we must look to the other factors.
The second Barker factor requires determination of the reason for the delay and the party to whom the delay is attributable. Delays which are attributable to one party count against that party. Brengettcy, 794 So.2d at 993(¶ 13). Furthermore, the "risk of non-persuasion rests with the prosecution," and where the record is silent as to the cause of a delay, this factor must weigh in favor of the defendant. Id.
¶ 31. Jones's trial was first scheduled to be held on May 15, 2000, approximately seven months after he was arrested on October 8, 1999. Three days before trial, defense counsel filed a motion for a mental examination for Jones, and the court granted the motion on the same day. From May 12, 2000 to February 13, 2002, the court was engaged in trying to procure a mental examination for Jones from the Mississippi State Hospital, during which time Jones continually failed to provide the hospital with the necessary information to conduct the examination. After obtaining the mental evaluation on February 13, 2002, the court entered a series of continuances: an agreed order of continuance, order of continuance due to defense counsel's illness, and order of continuance due to another civil trial setting. Jones's trial was eventually commenced on November 21, 2002.
¶ 32. These continuances appear to have overwhelmingly resulted from Jones's failure to provide necessary documentation to the hospital for his mental examination, his preparation for trial, and the illness of his counsel. These continuances should not be counted against the State in the Barker analysis.
¶ 33. The third Barker factor to consider is whether the defendant asserted his right before the trial. "A defendant has no duty to bring himself to trial.... Still he gains far more points under this prong of the Barker test where he has demanded a speedy trial. However, a demand for a speedy trial is distinct from a demand for dismissal due to violation of the right to a speedy trial." Brengettcy, 794 So.2d at 994(¶ 17) (citations omitted).
¶ 34. On May 23, 2002, Jones filed a motion to dismiss for denial of speedy trial. There is no indication from the docket that Jones filed a motion asserting his right to a speedy trial. This factor therefore weighs against Jones.
*602 ¶ 35. The final factor is prejudice against the defendant. Our supreme court has held: "[W]hen the length of delay is presumptively prejudicial, the burden of persuasion is on the state to show that the delay did not prejudice the defendant. Nevertheless, if the defendant fails to show actual prejudice to his defense, this prong of the Barker balancing test cannot weigh heavily in his favor." Ginn v. State, 860 So.2d 675, 684(¶ 26) (2003).
¶ 36. [P]rejudice to the defendant may manifest itself in two ways. First, the defendant may suffer because of the restraints to his liberty, whether it be the loss of his physical freedom, loss of a job, loss of friends or family, damage to his reputation, or anxiety. Second, the delay may actually impair the accused's ability to defend himself.
Stevens v. State, 808 So.2d 908, 917(¶ 24) (Miss.2002).
¶ 37. As we stated earlier, Jones was responsible for the extraordinary lapse of time between his arrest and his trial. Therefore, he cannot here complain about any prejudice borne by his own actions. Jones's failure to demonstrate the State's responsibility for the lapse of time between his arrest and trial, his failure to assert his right to a speedy trial, and his failure to show any real prejudice outweigh any delay which resulted from the court's schedule. We find no violation of Jones's constitutional right to a speedy trial.

Statutory Right
¶ 38. Our speedy trial statute, Mississippi Code Annotated section 99-17-1 (Rev.2000), provides that a defendant shall be tried within 270 days unless good cause be shown, and a continuance duly granted by the court. The analysis for the 270 day rule is very fact specific and relies heavily on whether the prosecution or defense caused the delays. Sharp v. State, 786 So.2d 372, 377(¶ 5) (Miss.2001). The reason for the delay is as important as who is responsible. The first step is to calculate the total number of days between the date of the arraignment and the date of trial. For this purpose, "[t]he date of arraignment is not counted but the date of trial is and weekends are counted unless the 270th day is a Sunday." Id. at (¶ 5).
¶ 39. The time between Jones's arraignment and his trial date was approximately 997 days. Eighty-six days elapsed between the day that Jones was arraigned and when he filed his motion for a mental examination. After granting Jones's motion on the same day, the court granted Jones a series of continuances to allow him time to send information which the hospital required in order for it to perform the mental examination. During this time, Jones continually failed to submit the required information, thus delaying the commencement of his trial. Therefore, the time span from the granting of Jones's motion for mental examination on May 5, 2000, to the court's receipt of the results of the mental examination on February 13, 2002, is properly charged against Jones. This period of time constituted a total of 648 days.
¶ 40. The record further indicates that the court granted an agreed order of continuance on March 1, 2002, which set trial for May 20, 2002. Since the motion for continuance was joined by Jones, it is dealt with as if it were sought by the defense. Continuances sought by the defense are charged against the defense. Herring v. State, 691 So.2d 948, 953 (Miss.1997). Jones is therefore charged with the elapse of 70 days for this continuance. On May 31, 2002, the court ordered a continuance in favor of Jones due to his counsel's illness and set trial for August 28, 2002. Jones likewise bears responsibility for this elapse of 89 days. Finally, on September 6, 2002, the court entered an order of *603 continuance due to another civil trial and set Jones's trial for November 18, 2002. A congested docket is considered "good cause" for delay if the continuance is actually granted for that reason. Sharp, 786 So.2d at 378(¶ 7). Therefore, the 73 days associated with this continuance are not chargeable to the State.
¶ 41. Eight-hundred and seven days are attributable to Jones and seventy-three days are due to a congested docket. This leaves the State responsible for a mere 117 days, well within the 270-day limit. Thus, Jones's statutory right to a speedy trial has not been violated.

7. Proportionality of the Sentence with the Crime
¶ 42. Jones next argues that the trial court erred in invoking a sentence grossly disproportionate to the crime of which he was charged. As already observed, Jones was convicted of robbery. At the sentencing hearing, the State presented evidence that Jones had been previously convicted of attempted robbery in 1979, automobile burglary in 1981, and grand larceny in 1990. The State further affirmed that Jones had served at least a year on each conviction. The circuit court found that Jones was an habitual offender under section 99-19-83 for sentencing purposes. Shortly thereafter, counsel for Jones argued that the sentence under section 99-19-83 was disproportionate with the crime of which Jones was convicted and urged that the court conduct a proportionality analysis. After hearing rebuttal arguments from the State, the circuit judge commented, "The Court is of the opinion that the facts of this case do not even rise to the necessity of a proportionality review... there's no inference that the sentence is disproportionate given the fact that this defendant has four felony convictions, two of those being crimes of violence...."
¶ 43. We agree with the circuit court. Therefore, we find no merit in this issue, as all requirements of section 99-19-83 were met. Moreover, Jones presented no evidence to justify the invocation of a proportionality analysis. While the sentence Jones received is indeed harsh for the offense he committed, the Mississippi Legislature has determined that the sentence Jones received is a proper sentence for an habitual offender. It is not up to us to change the sentencing scheme. That responsibility lies exclusively with the legislature.

8. Refusal of Jury Instruction
¶ 44. Jones finally argues that the circuit court committed plain error in refusing instruction D-5 and by the granting of D-3 in its place. The State counters that Jones's allegation of error is barred and should not be reviewed by the Court under the plain error doctrine.
¶ 45. During a review of jury instructions at trial, Jones offered two lesser-included instructions of petit larceny, D-3 and D-5. Upon finding that the jury instructions addressed the same subject matter, the circuit judge requested defense counsel to choose which instruction he wanted to give to the jury. Given that request, defense counsel chose D-3 and informed the court that it could refuse D-5.
¶ 46. The record clearly indicates that instruction D-3 was given, and D-5 was refused at the request of defense counsel. We therefore find that Jones may not now complain here on appeal concerning his own jury instructions. We consequently find no merit in this issue.
¶ 47. THE JUDGMENT OF THE CIRCUIT COURT OF LOWNDES *604 COUNTY OF CONVICTION OF ROBBERY AND SENTENCE OF LIFE AS AN HABITUAL OFFENDER IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LOWNDES COUNTY.
KING, C.J., BRIDGES AND LEE, P.JJ., MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.
NOTES
[1] Williams was the driver of the vehicle involved in the traffic stop after the robbery. Jones, along with a woman, was a passenger in the truck.