956 So.2d 237 (2006)
Jimmy Wallace SPEAGLE, Appellant
v.
STATE of Mississippi, Appellee.
No. 2005-KA-00493-COA.
Court of Appeals of Mississippi.
August 22, 2006.
Rehearing Denied March 20, 2007.
*238 Earl Lindsay Carter, Jr., attorney for appellant.
*239 Office of the Attorney General by Deirdre McCrory, attorney for appellee.
Before KING, C.J., GRIFFIS and BARNES, JJ.
BARNES, J., for the Court.
¶ 1. Jimmy Wallace Speagle was convicted by a jury of his peers in the Circuit Court of Perry County of the crimes of manslaughter and possession of a firearm by a convicted felon. Aggrieved, Speagle perfected his appeal to this Court. Finding no error, we affirm.

SUMMARY OF FACTS AND PROCEDURAL HISTORY
¶ 2. At approximately 6:00 p.m. on June 4, 2004, Chief Wayne Penton of the Beaumont, Mississippi Police Department received a telephone call from Jimmy Speagle, in which Speagle stated, "You're going to have to come and pick me up and send somebody to get Taylor [Walker] because I just killed him in my front yard." Penton notified Officer William Pipkins of the call, and Penton and Pipkins both headed to the Tree Top Manor apartment complex, at which Speagle was a resident. Pipkins arrived on the scene first, with Penton arriving shortly thereafter.
¶ 3. Penton testified that when he arrived, Speagle was on his front porch, and Taylor Walker was lying dead on the sidewalk in front of Speagle's apartment. Pipkins testified that when he arrived at the apartment complex, Speagle told him, "I just shot [Walker]." When Pipkins asked where the gun was, Speagle informed him that it was on the seat of his wheelchair, and that he was sitting on it. Pipkins secured the gun, which he described as a German-made .22 revolver; three rounds had been fired, and two were unfired. Speagle informed Pipkins that, prior to the shooting, he and Walker had been arguing and cursing each other; that Walker "slapped tobacco out of [Speagle's] lap" and walked away; that they continued to curse each other; and that Speagle then finally shot Walker. Speagle also volunteered to Pipkins, "I've been in the service; I knew exactly how to stop [Walker]."
¶ 4. Deputy Jimmy Dale Smith of the Perry County Sheriff's Department testified that, shortly after the shooting occurred, he was dispatched to the scene. He stated that when he arrived, he observed Walker lying dead on the sidewalk in front of Speagle's apartment; Smith later determined the body to be seventeen feet from the front door of the apartment. Additionally, Smith testified that he found neither blood spatters nor scuff marks between Walker's body and the front porch of the apartment. Smith further testified that after the shooting, he took Speagle to the station for questioning. He testified that Speagle waived his right to counsel and made an oral statement, which was recorded onto a microcassette.
¶ 5. In Speagle's statement  introduced by the State during its case-in-chief-Speagle claimed that on the afternoon of June 4, he was sitting on his front porch when Walker threatened him and approached him, brandishing a yellow-handled screwdriver. Speagle stated that Walker then came onto the front porch, knocked a can of tobacco from his hand, and then began to choke him. Speagle stated that it was at this point that he shot Walker. At trial, Speagle testified in his own defense, stating that on the morning of the shooting, Walker had slapped him; that later that afternoon, Walker approached him, "jabbing" with a screwdriver; that Speagle then pulled the gun and pointed it at Walker, warning Walker that he would shoot if he came any closer; that he then fired a warning shot; that Walker began *240 choking him; that Speagle fired one shot; that Walker began to choke him more forcefully; and that he then fired the fatal shot, causing Walker to fall backward onto the sidewalk. Speagle claimed that he shot Walker, who outweighed him by more than 125 pounds, because he was afraid for his life.
¶ 6. Mary Ann Tingle stated that three days prior to the shooting she visited the Tree Top Manor apartment complex to visit her brother and to pay a visit to Walker. She testified that while she was standing on Walker's front porch, Speagle came out of his apartment and told her, "Tell [Walker] to come on out. I've got something for him," and that Speagle then "picked up a little pistol up out of his wheelchair and then put it back down." Further, Stephen Mills, a resident of the apartment complex, testified that he saw Speagle and Walker arguing before the shooting took place, and that he heard a shot followed by Walker stating, "You shot me." Mills testified that Speagle then said to Walker, "No, I ain't [shot] you, but I'm going to shoot you if you keep messing with me." Mills stated that he heard another shot and looked around to see Walker take "one or two steps" before hitting the ground. Mills testified that Speagle had been sitting on his porch at the time of the shooting.
¶ 7. Dr. Stephen Hayne, admitted by the court as an expert in the field of forensic pathology, testified that he had performed the autopsy on Walker's body. Dr. Hayne found that Walker had sustained "an entrance gunshot wound located on the left side of the neck, and . . . an exit gunshot wound on the right side of the neck." Hayne further testified that the lack of gunpowder residue in or around the gunshot wound, in addition to the lack of flame injury to the wound area, led him to the conclusion that the shot that killed Walker had to have been fired from a distance of over two and one-half feet. Hayne also stated his opinion that it would have been impossible for Walker to have traveled seventeen feet without expelling blood; Hayne concluded that the absence of blood between the porch and the place where Walker's body came to rest meant that Walker had fallen where he was standing when shot.
¶ 8. Speagle was ultimately convicted of the crimes of manslaughter and possession of a firearm by a convicted felon. On appeal, Speagle raises a number of issues, which we address below.[1]

ISSUES AND ANALYSIS
I. WHETHER THE TRIAL COURT ERRED IN DENYING SPEAGLE'S MOTION FOR A SPECIAL VENIRE.
II. WHETHER THE TRIAL COURT ERRED IN REFUSING TO SEQUESTER THE JURY.
III. WHETHER THE TRIAL COURT ERRED IN DENYING SPEAGLE'S MOTION FOR INDIVIDUAL VOIR DIRE OF PROSPECTIVE JURORS.
¶ 9. Speagle claims that the trial court abused its discretion in three respects regarding jury selection and sequestration. We address each separately.
A. Whether the trial court erred in denying Speagle's motion for a special venire.
¶ 10. Section 13-5-77 of the Mississippi Code provides that, when a person *241 has been charged with a capital crime or with the crime of manslaughter, the accused or the district attorney, upon demand, has the right to a special venire. Miss.Code Ann. § 13-5-77 (Rev.2002); see also Davis v. State, 767 So.2d 986, 1000(¶ 47) (Miss.2000). If such a venire has been granted, "it is the duty of the trial judge, in open court, to draw from the jury box as many names as he desires in his discretion, not less than 40, for each special venire that is demanded." Davis, 767 So.2d at 986(¶ 47). The clerk of the court has the duty to issue a special venire facias directing the sheriff to summon the persons so drawn to appear in court on a particular day. Id. Furthermore, no juror summoned as a special venireman shall be impaneled or serve on more than one jury. Id. Speagle claims that he was prejudiced because the trial court failed to comply with the directives of section 13-5-77 upon his request for a special venire.
¶ 11. Though the trial court denied Speagle's motion for special venire in fact, the motion was granted in effect. In ruling upon Speagle's motion, the trial court stated the following:
The problem this Court sees is that [Speagle] is in jail unable to make bond, that if we continued it, it could not go in the February term because there is a two-week asbestos case set for that term. That would push this all the way to Junethe June term at the very earliest. This case is the first case set, so this would be a fresh paneljury panel. There won't be a grand jury drawn out of this jury panel, so for all intents and purposes, it will be a special venire for this case. I'm going to instruct the clerk that this jury coming in in December is to be treated as a special venire. Nobody is to be excused unless the parties agree to it. . . . find that this motion is not timely in that with the [Thanksgiving] holidays, we would not be able to get a special venire served in order to try this matter on December 6, so I am going to deny the motion; however, I have instructed the clerk that the jury that has been summoned is to be treated as a special venire, and this matter will go forward on December 6.
(Emphasis added). This Court will not overrule a trial court's denial of a motion for special venire except upon an abuse of discretion. Davis v. State, 684 So.2d 643, 650 (Miss.1996). Furthermore, we will not find an abuse of discretion unless the method of selecting jurors used "was fraudulent or such a radical departure from the method prescribed by the statute as to be unfair to the defendant or to prevent due process of law." Armstrong v. State, 214 So.2d 589, 594 (Miss.1968). It is clear from the record that the trial court took sufficient steps to ensure that Speagle received the benefit of a special venire. We note that the motion was brought to the trial court's attention on November 23, 2004two days before Thanksgivingand that, had the trial court granted Speagle's motion, his trial would have been delayed by six months at the very least. Considering the timing of the motion and the trial court's efforts to accommodate Speagle, we find that the trial court did not abuse its discretion in denying Speagle's motion. This issue is without merit.
B. Whether the trial court erred in refusing to sequester the jury.
¶ 12. Speagle claims that the trial court erred by failing to sequester the jury in his case. However, the record shows that Speagle's counsel never pursued a ruling on the motion to sequester. The Mississippi Supreme Court has repeatedly held that it is the movant's responsibility to obtain a ruling from the court on motions, and that failure to do so constitutes a waiver. See, e.g., Byrom v. State, 863 *242 So.2d 836, 851(¶ 27) (Miss.2003); see also URCCC 2.04 ("It is the duty of the movant . . . to pursue said motion to hearing and decision by the court. Failure to pursue a pretrial motion to hearing and decision before trial is deemed an abandonment of that motion. . . ."). Because Speagle never sought a ruling on the motion to sequester, there is no ruling which he can appeal. This issue is without merit.
C. Whether the trial court erred in denying Speagle's motion for individual voir dire of prospective jurors.
¶ 13. Uniform Circuit and County Court Rule 3.05 allows a circuit court, in its discretion, to utilize individualized sequestered voir dire. URCCC 3.05; see also Le v. State, 913 So.2d 913, 922-23(¶ 12) (Miss.2005). Speagle claims that the trial court's refusal to allow individualized sequestered voir dire of the jury pool in his case constitutes reversible error, as it was necessary due to the amount of publicity surrounding his case.
¶ 14. "[T]he decision of whether to allow individual sequestered jury voir dire should be left to the sound discretion of the trial court." Le, 913 So.2d at 923(¶ 14). This Court requires a showing of actual harm or prejudice before we will reverse a trial court's limitation on voir dire. Id. (citing Morris v. State, 843 So.2d 676, 678(¶ 3) (Miss.2003)). Both at trial and in his appellate brief, Speagle has made general assertions that residents of the Beaumont community were aware of the circumstances surrounding his case; however, the record is absent of any indication that this prejudiced him in any way. Furthermore, the few jurors who stated during voir dire that they had heard about the case claimed that they would be able to set aside what little knowledge they had, and render a fair and impartial decision. This Court gives great deference to such statements of impartiality. Id. (citing Morris, 843 So.2d at 678(¶ 9)). Nothing in the record supports Speagle's argument that the trial court erred in denying his motion for individual sequestered voir dire. Therefore, we find this issue to be without merit.
IV. WHETHER THE TRIAL COURT ERRED IN ALLOWING THE PROSECUTION TO AMEND SPEAGLE'S INDICTMENT.
¶ 15. Speagle also claims that the trial court erred in allowing the State to amend his indictment. The prosecution was granted leave to amend the indictment in order to correct a slight misnaming of the victim; to correct the recitation of venue; and, in the portion of the indictment charging Speagle with possession of a firearm by a felon, to list manslaughter instead of murder as the felony with which Speagle had been formerly convicted. Speagle concedes that each of these amendments, taken alone, would be permissible; however, he argues that, taken together, the amendments rendered the indictment fatally defective. We find Speagle's argument unpersuasive.
¶ 16. "Amendments to indictments are allowed when they are of form and not substance." Burson v. State, 756 So.2d 830, 834(¶ 14) (Miss.Ct.App.2000) (citing Rhymes v. State, 638 So.2d 1270, 1275 (Miss.1994)). The test for whether a change is one of form or substance is "whether the defense as it originally stood would be equally available after the amendment is made." Id. (quoting Eakes v. State, 665 So.2d 852, 859-60 (Miss. 1995)). It is clear that the amendments made to Speagle's indictment were of form only, not of substance, and in no way affected his defense.
¶ 17. The first amendment allowed by the trial court was a slight *243 change to the name of the victim, from "Taylor Walker, II," to "Taylor C. Walker, II" (emphasis added). It is well-established that such a change is merely of form, and not of substance. See, e.g., Burson, 756 So.2d at 833-34 (¶¶ 11-15). Secondly, the State was allowed to amend Speagle's indictment to correct an error in the recitation of venue to Perry County, instead of Forrest County. This Court has held that "[t]he failure to properly charge venue is a procedural defect that may be amended upon order of the trial court without the necessity of grand jury action." Garner v. State, 856 So.2d 729, 734(¶ 16) (Miss.Ct.App.2003). Thus, this amendment was proper as well.
¶ 18. Lastly, the portion of Speagle's indictment charging him with possession of a firearm by a convicted felon initially stated that Speagle had formerly been convicted of murder. The State sought to correct the indictment to reflect the fact that Speagle had instead formerly been convicted of manslaughter. It is clear from reading the relevant statute that it mattered not which felony Speagle had been convicted of previously: under section 97-37-5 of the Mississippi Code, a person convicted of any felony is prohibited from possessing a deadly weapon. Section 97-37-5 reads, in pertinent part:
It shall be unlawful for any person who has been convicted of a felony under the laws of this state, any other state, or of the United States to possess any firearm or any bowie knife, dirk knife, butcher knife, switchblade knife, metallic knuckles, blackjack, or any muffler or silencer for any firearm unless such person has received a pardon for such felony, has received a relief from disability . . . or has received a certificate of rehabilitation pursuant to subsection (3) of this section.
Miss.Code Ann. § 97-37-5(1) (Rev.2000). The amendment in no way affected Speagle's defense, as his defense would be the same no matter which felony was listed as the underlying felony. Thus, it is clear that this amendment was one of form and not of substance.
¶ 19. We find that, as the three amendments to Speagle's indictment were of form and not of substance, the trial court did not err in allowing these changes. Further, we note that Speagle has cited no authority suggesting that an indictment may be rendered defective by multiple lawful amendments. This issue is without merit.
V. WHETHER THE VERDICT WAS AGAINST THE SUFFICIENCY OF THE EVIDENCE.
¶ 20. Speagle asserts that there was insufficient evidence presented at trial to support his conviction for manslaughter. Specifically, Speagle argues that the trial court erred in failing to invoke the Weathersby rule and grant him a peremptory instruction.
¶ 21. In Weathersby v. State, 165 Miss. 207, 209, 147 So. 481, 482 (1933), the Mississippi Supreme Court stated that "where the defendant or the defendant's witnesses are the only eyewitnesses to the homicide, their version, if reasonable, must be accepted as true, unless substantially contradicted in material particulars by a credible witness or witnesses for the state, or by the physical facts or by the facts of common knowledge." This holding has since become known as the Weathersby rule. "[A] Weathersby challenge is, essentially, a test of the sufficiency of the evidence." Davis v. State, 891 So.2d 256, 258(¶ 5) (Miss.Ct.App.2004) (citing Green v. State, 614 So.2d 926, 931 (Miss.1992)).
¶ 22. Speagle claims that his account of the shooting is absolutely uncontradicted *244 by any of the physical or testimonial evidence, and that therefore he should have been granted a peremptory instruction. However, we find otherwise. Dr. Stephen Hayne testified that Walker was killed by a shot that had to have been fired from a distance of at least two and one-half feet. Furthermore, Hayne concluded that the absence of blood between the porch and the place where Walker's body came to rest meant that Walker had fallen where he was standing when he was shot. Looking at this evidence in the light most favorable to the State, see id. (citing Burge v. State, 472 So.2d 392, 396 (Miss.1985)), we find that it contradicts Speagle's testimony that he shot Walker from close range.
¶ 23. Because Speagle's testimony was contradicted by physical and testimonial evidence, we hold that the trial court did not err in denying Speagle the benefit of the Weathersby rule. This issue is without merit.
VI. WHETHER THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
¶ 24. Speagle also claims that the verdict was against the overwhelming weight of the evidence. Once again, we find his arguments unpersuasive.
¶ 25. When reviewing the denial of a motion for new trial based on an objection to the weight of the evidence, this Court will only reverse a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. Bush v. State, 895 So.2d 836, 844(¶ 18) (Miss.2005). In making our determination, this Court is required to view the evidence in the light most favorable to the verdict; we will grant a new trial "only in exceptional cases in which the evidence preponderates heavily against the verdict." Id.
¶ 26. It is clear that the present case is not one of those "exceptional cases in which the evidence preponderates heavily against the verdict." In fact, the evidence suggests very strongly that Speagle shot Walker from some distance and not in reasonable self-defense. We find this issue to be without merit.

CONCLUSION
¶ 27. Finding all of Speagle's claims to be without merit, we affirm the judgment of the Circuit Court of Perry County.
¶ 28. THE JUDGMENT OF THE CIRCUIT COURT OF PERRY COUNTY OF CONVICTION OF COUNT I MANSLAUGHTER AND COUNT II POSSESSION OF A FIREARM BY A CONVICTED FELON, AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AS A HABITUAL OFFENDER, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO PERRY COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, IRVING, CHANDLER, GRIFFIS, ISHEE AND ROBERTS, JJ., CONCUR.
NOTES
[1] Speagle has not appealed his conviction of the crime of possession of a firearm by a convicted felon.