977 So.2d 1227 (2008)
Michael Latavin SMITH, Appellant
v.
STATE of Mississippi, Appellee.
No. 2006-KA-01946-COA.
Court of Appeals of Mississippi.
March 11, 2008.
*1229 H. Bernard Gautier, Pascagoula, attorney for appellant.
Office of the Attorney General, by Ladonna C. Holland, attorney for appellee.
Before MYERS, P.J., IRVING and ISHEE, JJ.
MYERS, P.J., for the Court.
¶ 1. Michael Latavin Smith was convicted of murder and sentenced to serve a term of life in the custody of the Mississippi Department of Corrections. Smith seeks review of his conviction, requesting review of three issues on appeal. First, Smith asks whether his confessions were properly admitted by the trial court. Second, whether Smith was deprived of his right to a speedy trial. Finally, Smith asks whether the trial court abused its discretion by denying his motion for a sequestered voir dire. Finding no error in the trial court's actions, we affirm.

FACTS AND PROCEDURAL HISTORY
¶ 2. Smith was charged with murdering his girlfriend, Joanna M. Eubanks, on August 11, 2004. Eubanks was shot once in the face at close range and died as a result of her injuries. Smith admitted to firing the gun, but he maintained that the shooting was accidental. Smith first maintained that he was cleaning the gun when the gun accidentally fired, fatally wounding Eubanks. Smith later claimed that he first pointed the gun at himself, then at Eubanks. He stated that the gun fired accidentally, surprising him. The State argued at trial that the shooting was intentional and was a result of Eubank's decision to end their relationship.
¶ 3. Smith was served with capias on October 19, 2004, and later arraigned in George County Circuit Court on November 1, 2004. Sidney Barnett served as Smith's appointed attorney during the' arraignment only. After many continuances and changes in Smith's appointed counsel, trial took place on June 26, 2006. At trial, Smith filed a motion to suppress his statements and confession, a motion to dismiss for failure to provide a speedy trial, and a motion for a sequestered voir dire on the limited issue of race and intimate interracial relationships. All of these motions were denied by the trial court. Smith was found guilty of murdering Eubanks and sentenced to life in prison. After the judgment, Smith filed a motion for new trial or, in the alternative, a motion for JNOV, which was denied. Smith now appeals.

DISCUSSION
I. WHETHER SMITH'S CONFESSIONS WERE PROPERLY ADMITTED BY THE TRIAL COURT.
A. WHETHER THERE WAS A VALID WAIVER OF MIRANDA RIGHTS UNDER THE FIFTH AMENDMENT.
¶ 4. An appellate court will review a trial court's admission of evidence under an *1230 abuse of discretion standard. Ginn v. State, 860 So.2d 675, 680(¶ 10) (Miss.2003). Additionally, "[d]etermining whether a confession is admissible is a finding of fact which is not disturbed unless the trial judge applied an incorrect legal standard, committed manifest error, or the decision was contrary to the overwhelming weight of the evidence." Kircher v. State, 753 So.2d 1017, 1023(¶ 27) (Miss.1999) (citing Wright v. State, 730 So.2d 1106, 1108(¶ 11) (Miss.1998)).
¶ 5. Smith argues on appeal that his various confessions were not voluntarily, intelligently, and knowingly given because he did not have capacity to waive his Miranda rights.[1] Specifically, Smith argues his Fifth Amendment rights were violated because his statements were taken and used as evidence at trial without a valid waiver of his Miranda rights. The majority of Smith's argument alleges that he lacked the capacity to waive his rights because he had limited intellectual capacity and obtained no education beyond the fifth grade. Smith argues that testimony offered by his mother, Joanne Spivery, showed that he was a slow student in school and had, at one time, been prescribed medicine to help with his hyperactivity in school. Spivery additionally, testified that he had limited ability to understand detailed or complicated concepts, and he had trouble reading and writing.
¶ 6. The State argues that Smith's waiver of his Miranda rights was valid. The State further contends that Smith never asserted his right to remain silent or his right to counsel. The State asserts that Deputy John Keel, the officer who interviewed Smith, testified that Miranda warnings were given to Smith before his statements were taken on August 12, 2004, and August 17, 2004. Deputy Keel testified at trial that Smith signed a waiver of rights form before giving each of the statements, and Smith was not abused, threatened, or promised anything in return for his signed statements. The State also argues that when looking at the totality of the circumstances, Smith's confession was voluntarily given.
¶ 7. The State points to McGowan v. State, 706 So.2d 231, 235(¶ 11) (Miss.1997) in support of its argument. That case involved a defendant with a low IQ and mental retardation who confessed to the crime but later moved to suppress his confession at trial. The Mississippi Supreme Court in McGowan upheld the admission of the confession, finding that "the mental abilities of an accused are but one factor to be considered in determining whether the confession was knowingly, intelligently and voluntarily made." McGowan, 706 So.2d at 235(¶ 12) (citing Neal v. State, 451 So.2d 743, 756 (Miss. 1984)).
¶ 8. Under the Fifth Amendment, a person may invoke his right to counsel at any time prior to or during custodial interrogation. Holland v. State, 587 So.2d 848, 856 (Miss.1991). However, in order to invoke the Fifth Amendment right to counsel, a request for counsel must be "specifically invoked." Mooney v. State, 951 So.2d 627, 629(¶ 9) (Miss.Ct.App.2007) (citing Holland, 587 So.2d at 856). The Sixth Amendment right to counsel only attaches once formal proceedings have begun against the accused and must be clearly invoked for each separate charge, meaning the "right [to counsel] . . . is offense speture *1231 Texas v. Cobb, 532 U.S. 162, 167, 121 S.Ct. 1335, 149 L.Ed.2d 321 (2001) (quoting McNeil v. Wisconsin, 501 U.S. 171, 175, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991)). "Adversarial proceedings are held to have been initiated when a defendant is arrested pursuant to a warrant." Lattimore v. State, 958 So.2d 192, 198(¶ 11) (Miss.2007) (citing Nicholson v. State, 523 So.2d 68, 74 (Miss.1988)). "At all critical stages thereafter, the accused is of right entitled to access to counsel, absent a specific knowing and intelligent waiver tied to that stage." Brooks v. State, 903 So.2d 691, 694-95(¶ 7) (Miss.2005) (quoting Coleman v. State, 592 So.2d 517, 520 (Miss. 1991)) (emphasis added).
¶ 9. To be admissible at trial, a confession "must have been intelligently, knowingly and voluntarily given, and not a product of police threats, promises or inducements." Wilson v. State, 936 So.2d 357, 361(¶ 18) (Miss.2006) (quoting Manix v. State, 895 So.2d 167, 180(¶ 39) (Miss.2005)). The admission of a confession is a finding of fact for the trial court's determination; therefore, an appellate court will not reverse a finding of fact unless the trial court was manifestly incorrect. Id. (citing Glasper v. State, 914 So.2d 708, 716(¶ 21) (Miss. 2005)). A confession will be considered voluntary, if, after looking at the totality of the circumstances, "the statement is the product of the" accused's free and rational choice." Id. at 362(¶ 8) (citing Jacobs v. State, 870 So.2d 1202, 1206(¶ 9) (Miss. 2004)).
¶ 10. Deputy Keel testified at the suppression hearing that on August 12, 2004, he read Smith the Miranda warnings before interviewing him regarding the ongoing investigation of Eubanks's murder. Deputy Keel also testified that Smith was facing him when the Miranda rights were being read to him, and Smith appeared to understand the Miranda warnings. Deputy Keel testified that Smith signed the waiver in his and Officer J.D Mitchell's presence. Deputy Keel additionally testified that Smith did not indicate that he did not understand his rights, and that he did not request an attorney. Deputy Keel also stated that he did not coerce, threaten, physically abuse, or promise Smith anything in return for his statements. Deputy Keel further testified that he verbally read the Miranda warnings to Smith the next day, August 13, 2004, and so noted it in his report. Deputy Keel additionally testified that he spoke again with Smith on August 17, 2004, at the George County Regional Jail as part, of the ongoing murder investigation. Deputy Keel testified that he again read the Miranda warnings to Smith. Smith appeared to understand the warnings and signed the waiver. Deputy Keel testified that Smith never invoked his right to counsel at this interview. Further, as the State argues, Smith was not charged with the murder until August 18, 2004. Although he was in custody beginning on August 12, 2004, he was being held in custody for three outstanding bench warrants for charges that were unrelated to the case before us. During this time, Smith voluntarily gave statements to Deputy Keel on August 12 and on August 17. During his custodial interrogation, Smith was given Miranda warnings, and according to Deputy Keel, he waived his rights. Then Smith was arrested officially for Eubanks's murder on August 18 and made an initial appearance on the murder charge that same day.
¶ 11. The trial court considered many factors in its determination that the Confessions would be admissible. The trial court noted that Smith had previously pleaded guilty to other charges, indicating that he understood the system. The trial court also determined that Smith had sworn that he could read and write, when *1232 he pleaded guilty to the other charges. The trial court additionally found that the^e was no evidence indicating that he was coerced or intimidated into making the statements, and there was no evidence that Smith possessed a learning disability or low IQ that would prevent him from fully understanding and waiving his rights. Accordingly, the trial court allowed in all statements by Smith. From our review of the record, there is no evidence that demonstrates that Smith did not validly waive his Miranda rights; therefore, we affirm the trial court's admission of Smith's statements.
B. WHETHER SMITH WAS IMPROPERLY DENIED HIS SIXTH AMENDMENT RIGHT TO COUNSEL.
¶ 12. Smith additionally argues that his Sixth Amendment rights were violated because his statements to the police were introduced into evidence without Smith having benefit of counsel. Smith argues that he was denied his right to counsel which requires that his incriminating statements be excluded from evidence as a result. The State argues that Smith never invoked his right to counsel after being informed of his rights. Thus, the State argues, if the right was never invoked, Smith cannot now complain he was denied his right to have an attorney present.
¶ 13. The Sixth Amendment to the United States Constitution requires that "in all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." As stated previously, a Sixth Amendment right to counsel "does not attach until a prosecution is commenced, that is, at or after the initiation of adversary judicial criminal proceedings  whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." Cobb, 532 U.S. at 167-68, 121 S.Ct. 1335 (quoting McNeil, 501 U.S. at 175, 111 S.Ct. 2204). Therefore, Smith's Sixth Amendment right to counsel did not formally attach until he was indicted or charged with Eubanks's murder. The record shows that Smith was formally charged with Eubanks's murder on August 18, 2004, and made his initial appearance on the murder charge that same day; thus his Sixth Amendment right to counsel attached at this time. At his arraignment, he was provided with an attorney and was informed of his right to an attorney. Smith later informed the trial court, after several attempts by his mother to secure counsel, that he wished to have counsel, but he lacked the ability to pay. The record reflects that, at that time, the trial court appointed counsel for him. We find no merit in Smith's contention that his Sixth Amendment right to counsel was violated.
C. WHETHER THERE WAS AN UNNECESSARY DELAY IN PROVIDING SMITH AN INITIAL APPEARANCE.
¶ 14. Smith also argues that the State failed to provide him with an initial appearance within forty-eight hours of his arrest on murder charges, as required under Mississippi Code Annotated section 99-3-17 (Rev.2007). Smith claims that there was unnecessary delay, resulting in him being improperly held in jail for six days before he was allowed his initial appearance. Smith claims this amounts to reversible error. The State counters that this argument is without merit since Smith was being held on outstanding bench warrants unrelated to Eubanks's murder. The State argues that since Smith was not charged or arraigned until August 18, 2004, for Eubanks's murder, his initial appearance occurred within the forty-eight hour time frame required under Mississippi Code Annotated section 99-3-17.
¶ 15. Smith was being held in custody on three unrelated bench warrants from *1233 August 12, 2004, until August 17, 2004. Smith was then charged with the Eubanks's murder on August 18, 2004, and arraigned in court that same day. We find no merit to Smith's claim.
II. WHETHER SMITH WAS DENIED A SPEEDY TRIAL.
¶ 16. Smith argues that his right to a speedy trial was violated for several reasons. Smith argues that there was no good cause for the delays. Smith also argues that he was unaware of and did not agree to most of the continuances obtained by his previous counsel. Therefore, Smith contends that he was not responsible for the delays.
¶ 17. The State argues that in each of the continuances there was good cause shown. The State further argues that Smith's seven consecutive continuances tolled the time from January 24, 2005, until June 26, 2006, or 518 of the 604 days between arraignment and trial. Therefore, the State argues Smith's statutory right to a speedy trial was not violated.
¶ 18. When a speedy trial violation is alleged, an appellate court must determine whether a trial court had good cause for the delay. Flora v. State, 925 So.2d 797, 814(¶ 58) (Miss.2006) (citing DeLoach v. State, 722 So.2d 512, 516(¶ 12) (Miss. 1998)). "If substantial credible evidence exists from which a finding of good cause may fairly have been made, we will leave the finding undisturbed." Id. (citing Folk v. State, 576 So.2d 1243, 1247 (Miss.1991)). A criminal defendant is guaranteed the right to a speedy trial under the Sixth and Fourteenth Amendments of the United States Constitution, the Mississippi Constitution, and under Mississippi Code Annotated section 99-17-1. Id. at 814(¶ 59). The chart below outlines each step in the trial process, beginning with the date the crime was committed and ending with the actual date of trial.

DATE EVENT
08-11-04 Date crime committed.
08-12-04 Smith is arrested and held on three outstanding
 bench warrants for charges unrelated
 to the present case.
08-18-04 Initial appearance by Smith on murder
 charge.
11-01-04 Smith is arraigned on murder charge and
 represented by public defender for arraignment.
 Smith and his mother, Ms. Spivery,
 stated she was attempting to hire an attorney.
 Trial is set for 01-24-07.
12-01-04 Smith appears without counsel and states
 that his mother is still attempting to procure
 an attorney. Court allows more time
 to procure an attorney and orders Smith to
 appear on 01-24-05.
01-24-05 Smith appears before the court and states
 he is unable to afford an attorney. The
 court appoints Sidney Barnett and David
 Futch to represent Smith. Smith moves
 for continuance due to recent appointment
 of attorneys. Trial is set for 04-18-05.
01-31-05 Order granting continuance signed.
03-24-05 David Futch moves to withdraw as counsel
 due to a conflict of interest.
03-29-05 Order allowing withdrawal David Futch as
 counsel is signed.
04-06-05 Order appointing Daphne Pattison as co-counsel.
04-15-05 Sidney Barnett moves for a second continuance
 to give new counsel, Daphne Pattison,
 time to prepare.
04-19-05 Order granting continuance granted.
04-25-05 Smith demands right to speedy trial.
07-15-05 Smith moves for third continuance, citing
 reasons that include: need to obtain
 Smith's mental health and school records,
 tropical storm Cindy and Dennis caused
 office closings and delayed preparation,
 and counsel's involvement in various other
 trials.
07-19-05 Order entered granting Smith's motion for
 continuance. Defendant waives constitutional
 and statutory right to speedy trial
 for the period of 08-3-05 until 10-24-05.
10-28-05 Order for continuance granted due to co-counsel
 for defendant Daphne Pattison's
 unavailability due to Hurricane Katrina.
 Trial reset for 01-17-06.
12-06-05 Order for continuance granted in light of
 co-counsel Daphne Pattison's permanent
 relocation to Houston following the destruction
 of her office in Mississippi and in
 light of a conflict of interest which would
 prevent her from trying the case until 10-01-06
 at earliest. Daphne Pattison was
 allowed to withdraw and Attorney Chris
 Dobbins was appointed in her place.
*1234
01-17-06 Order for continuance filed in order to
 allow Chris Dobbins time to prepare.
 Family members of Smith were present
 and acknowledged that they had been advised
 of the change.
01-17-06 Order granting Smith's motion for continuance
 in order to allow Chris Dobbins time
 to prepare since he was newly appointed to
 the case. Trial is set for 05-01-06.
02-02-06 Order appointing Ross Simons to replace
 Sidney Barnett after his relocation due to
 Hurricane Katrina.
04-18-06 Smith files motion for continuance in order
 to prepare for expert witnesses and in order
 to obtain pertinent information from
 Dr. Steven Hayne regarding the autopsy
 report. Trial set for 6-26-06.
05-01-06 Continuance granted. Judge noted a death
 in the immediate family of one of Smith's
 attorneys.
06-13-06 Smith files motion to dismiss for failure to
 provide a speedy trial.
06-15-06 Motion to dismiss for failure to provide a
 speedy trial is denied. Court found that
 there was good cause shown for each of the
 delays with respect to the statutory speedy
 trial period and there were just reasons
 and no prejudicial effect on Smith with
 regard to the constitutional speedy trial.
06-26-06 Trial began.

A. WHETHER SMITH'S STATUTORY RIGHT UNDER MISSISSIPPI CODE ANNOTATED SECTION 99-17-1 WAS VIOLATED.
¶ 19. Under Mississippi Code Annotated section 99-17-1 (Rev.2007), a defendant must be tried within 270 days of his arraignment to avoid a possible speedy trial violation, unless the court grants a continuance for good cause. In addition, "[t]he 270-day rule analysis is very fact specific and hinges upon which side (prosecution, or defense) caused the delays." Sharp v. State, 786 So.2d 372, 377(¶ 5) (Miss.2001). An appellate court must first determine the total amount of days between the day of arraignment, which is not counted in the total, and the actual date of trial. Id. Here, there were 603 days between the date of arraignment and the date of trial.
¶ 20. Then, an appellate court is to consider each of the delays separately. Delays attributed to the defendant do not count toward the 270-day total, but each delay attributed to the State does count toward the total. Id. (citing Baine v. State, 604 So.2d 258, 264 (Miss.1992)). Any delay that is caused by the defendant will "toll the running of the time period for that length of time, and correspondingly, this time is subtracted from the total amount of the delay." Manix, 895 So.2d at 174(¶ 9).
¶ 21. A trial court's "finding of good cause for delay is a finding of ultimate fact and should be treated on appeal as any other finding of fact; it will be left undisturbed where there is in record substantial credible evidence from which it could have been made." Sharp, 786 So.2d at 379(¶ 9) (citing Walton v. State, 678 So.2d 645, 648 (Miss.1996)).
¶ 22. The trial court in this case found that there had been no speedy trial violation. This Court recognizes that "[a] trial judge's finding will not be reversed unless manifestly wrong." Hersick v. State, 904 So.2d 116, 125(¶ 31) (Miss.2004). From this Court's review of the record, we find sufficient good cause shown for each of the continuances granted by the trial court, which are listed in the chart above. We agree with the State's argument that Smith's various continuances tolled the time from January 24, 2005, until June 26, 2006, resulting in no speedy trial violations. The trial court stated that there were good reasons for the delays, which resulted in no prejudice to Smith and were actually for his benefit. Therefore, we find no merit to Smith's argument that his statutory right to a speedy trial was violated.
*1235 B. WHETHER SMITH'S CONSTITUTIONAL RIGHT UNDER THE UNITED STATES CONSTITUTION AND THE MISSISSIPPI CONSTITUTION WAS VIOLATED.
¶ 23. Smith first asserts that the delay was presumptively prejudicial since it exceeded an eight-month time period. Branson v. State, 944 So.2d 922, 926(¶ 12) (Miss.Ct.App.2006) (citing Spencer v. State, 592 So.2d 1382, 1387 (Miss.1991)). Smith argues that since he was not tried for Eubanks's murder until more than 600 days after his arrest, the time period was presumptively prejudicial. Smith argues that his constitutional right to a speedy trial was violated because he never personally agreed to a continuance motion or to waive his rights to a speedy trial; thus, there was no good cause for the continuances granted. Smith argues there was no proof he was even in the courtroom at the time these motions were before the trial court. Smith argues he was prejudiced as a result of the delay, and the confinement caused him cumulative anxiety. Smith argues that he asserted his right to a speedy trial by filing a motion, demanding that his case be dismissed for failure to afford him a speedy trial. Smith requests on appeal that the trial court's judgment be reversed and rendered or, in the alternative, that the trial court's judgment be reversed without prejudice to re-indict.
¶ 24. "A determination of whether an accused has been afforded a speedy trial within the parameters set forth in Mississippi Code Annotated section 99-17-1 requires a stricter analysis than what is constitutionally required." Shumaker v. State, 956 So.2d 1078, 1082(¶ 4) (Miss.Ct. App.2007). As a result, the State argues that since Smith's statutory right to a speedy trial was not violated, under the Shumaker analysis, Smith's constitutional right to a speedy trial was also not violated. Id. While the State acknowledges that the length of the delay is well over the eight-month mark, it argues that Smith was responsible for much of the delay, consisting of numerous continuances by his attorneys. The State also argues that these continuances were granted for good cause by the trial court. The State also acknowledges that Smith did make a demand for a speedy trial, but Smith suffered no prejudice from the delay. The State argues that cumulative anxiety caused by his confinement does not rise to the level of showing prejudice against Smith.
¶ 25. In Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), %he United States Supreme Court established a four-part test that was adopted by Mississippi courts. An appellate court must consider: "[the] [l]ength of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." Id. at 530, 92 S.Ct. 2182. Each of these factors will be addressed in turn.
1. LENGTH OF DELAY.
¶ 26. In this case, there was over an eight-month delay in the time Smith's case was brought to trial, thus triggering the need for further analysis under the three other Barker factors.
2. REASON FOR DELAY.
¶ 27. Here, the reasons for the delays are listed in the chart above. The Mississippi Supreme Court has stated that "[t]he necessary time for the accused and his counsel to prepare his trial must necessarily be left largely to the sound discretion of the trial judge, bearing in mind the facts and circumstances of the particular case." Manix, 895 So.2d at 174(¶ 10) (citing Wiley v. State, 582 So.2d 1008, 1012 (Miss.1991)). *1236 Smith's defense counsel was preparing for a complicated murder trial, involving many difficult issues and requiring extensive expert testimony. Additionally, most of the continuance motions requested by counsel for the defense were sought in order to prepare for trial, to allow extra time in light of newly appointed counsel to prepare for trial, to prepare for expert witnesses, to allow new counsel to be appointed because of failing health of the current co-counsel for Smith, or to obtain records of information needed in preparation for trial.
¶ 28. This Court also notes that a "delay caused by the withdrawal of the defendant's attorney which entails allowing the new attorney a reasonable time to become familiar with the case and prepare for trial cannot be weighed against the State." Manix, 895 So.2d at 175(¶ 13) (citing Johnson v. State, 666 So.2d 784, 792 (Miss. 1995)). Further, in Manix, the Mississippi Supreme Court determined that "the replacement of defendant['s] counsel due to health concerns" constituted good cause. Id. at (¶ 14). Unfortunately, during the time of preparation for Smith's trial, Hurricane Katrina struck, causing attorneys working on Smith's case to be uprooted from the area, which further contributed to the delay in Smith's trial preparation. Eventually, both attorneys for Smith had to be replaced because they were forced to permanently relocate due to the Hurricane Katrina. In light of the foregoing factors, we find that there existed sufficient good cause for each of the delays allowed by the trial court and affirm the trial court's decision.
3. SMITH'S ASSERTION OF HIS RIGHT.
¶ 29. Here, there is no question that Smith asserted his right to a speedy trial. Smith filed a motion to dismiss for failure to afford him a speedy trial on April 25, 2005. Therefore, this factor weighs in Smith's favor.
4. PREJUDICE TO SMITH.
¶ 30. First, "[w]hile this Court has noted the importance of the prejudice factor and has attempted to protect against the type of problems listed by Barker, we have remained reluctant to uphold dismissal of charges on speedy trial grounds where the defendant suffered no actual prejudice." Price v. State, 898 So.2d 641, 649(¶ 18) (Miss.2005) (citing State v. Magnuscn, 646 So.2d 1275, 1284 (Miss.1994)). In determining whether there has been prejudice against Smith, an appellate court will look at three factors: "(i) prevention of oppressive pretrial incarceration; (ii) minimization of anxiety and concern of the accused; and (hi) limiting the possibility that the defense will be impaired." Id. at 650(¶ 18). "Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." Id.
¶ 31. Here, while the delay was longer than the standard 270 day threshold, the trial court found the delays were to the benefit of Smith. Many of the delays were requested in order to obtain records and to allow his defense team time to adequately prepare for trial. Further, Smith was initially held in jail on three outstanding bench warrants unrelated to Eubanks's murder. The trial court found that these delays caused no prejudice to Smith, and we agree. We find the delays were not prejudicial to Smith, but they were to his benefit.
III. WHETHER THE TRIAL COURT ERRED IN DENYING SMITH'S MOTION FOR A SEQUESTERED VOIR DIRE.
¶ 32. The Mississippi Supreme Court has stated many times that "the decision of whether to allow individual sequestered jury voir dire should be left to the sound discretion of the trial court." Le v. State, 913 So.2d 913, 923(¶ 14) (Miss. *1237 2005) (citing Stevens v. State, 806 So.2d 1031, 1055 (¶ 112) (Miss.2001)) ("the decision of whether to allow individual sequestered jury voir dire should be left to the discretion of the trial court"). An appellate court will overturn a denial of a sequestered voir dire only if the trial court committed an abuse of discretion. Morris v. State, 843 So.2d 676, 678(¶ 3) (Miss.2003) (citing Jackson v. State, 791 So.2d 830, 835(¶ 21) (Miss.2001)). In addition, an appellate court will not overturn a trial court's decision on sequestered voir dire unless there is "a showing of actual harm or prejudice." Speagle v. State, 956 So.2d 237, 242(¶ 14) (Miss.Ct.App.2006) (citing Le, 913 So.2d at 923(¶ 14)).
¶ 33. Smith filed a motion seeking individual sequestered voir dire on the limited issue of attitudes toward race and intimate interracial relationships, which was denied by the trial court. Smith is an African American, and the victim was Caucasian. Smith argues that issues involving interracial relationships are so sensitive in nature that most persons would be hesitant to discuss truthfully their feelings in front of other potential jury members. Smith argues that since George County is a small community and because he was not allowed a sequestered voir dire, he was unable to freely question members of the jury pool. Smith argues this resulted in him not being able to obtain a fair and impartial jury.
¶ 34. The State argues that the trial court made it clear to potential jury members that if they felt more comfortable answering any of the questions privately before the bench, they would be allowed to approach the bench to answer questions. This, the State argues, was sufficient to assure Smith a fair and impartial jury. Further, the trial court asked all jurors whether they could be fair and impartial, to which they all answered in the affirmative. "[An appellate court] gives great deference to such statements of impartiality." Speagle, 956 So.2d at 242(¶ 14).
¶ 35. The record before this Court contains no evidence that Smith suffered actual prejudice or actual harm as a result of the trial court's denial of a sequestered voir dire. We find no merit in this argument and affirm the trial court's denial of the sequestered voir dire.

CONCLUSION
¶ 36. Here, this Court finds that there was no evidence in the record that Smith's waiver of his Miranda rights was invalid. There is additionally no evidence in the record that Smith's Fifth and Sixth Amendment rights were violated, as Smith was informed of his rights and validly waived them. Further, we find good cause existed for each of the continuances granted by the trial court, and the continuances were granted to the benefit of Smith, without prejudice. Therefore, we find that there was no statutory or constitutional violation of Smith's right to a speedy trial. We also cannot say that the trial court abused its discretion in denying a sequestered voir dire to Smith. We, accordingly, affirm Smith's conviction and sentence.
¶ 37. THE JUDGMENT OF THE CIRCUIT COURT OF GEORGE COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO GEORGE COUNTY.
KING, C.J., LEE, P.J., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 468, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (holding in part that during custodial interrogation, in order "to permit a full opportunity to exercise the privilege against self-incrimination, the accused must be adequately and effectively apprised of his rights and the exercise of those rights must be fully honored.")