ISHEE, J.,
for the COURT.
¶ 1. Gregory Deon Jones was found guilty of armed robbery on July 26, 2006, and was sentenced as a habitual offender to life in the custody of the Mississippi Department of Corrections without eligibility for parole or probation. Jones now appeals that conviction, arguing on appeal that the trial court erred in failing to grant his motion to dismiss for failure to grant a speedy trial. Jones claims that he suffered prejudice because he was unable to locate a critical witness who could have established his innocence. Finding no error, we affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2. On the morning of February 5, 2005, Betty Thomas, a store clerk, was working alone at the Super Saver convenience store on East McDowell Road in Jackson, Mississippi. According to her trial testimony, Thomas observed a man enter the store, *1174 grab a drink, and then approach her at the counter for a Swisher Sweets Cigar. As Thomas turned from the counter to retrieve the cigar, the unidentified male approached her from the side, holding a knife, and told her to open the register and sit down. The man took between forty and sixty dollars in cash from the register. According to Thomas, the customer then retrieved Newport cigarettes and again told her to open the register. Thomas complied and the customer looked in the register for more money. Thomas then locked the door after the man left and called the police. She testified at trial that although the robber was only in the store for around five minutes, she was able to get a good look at his face and provided the police with a physical description. Thomas described the suspect as a male with a medium brown complexion with facial hair, being between 160 and 200 pounds and between five-feet-six-inches and six-feet tall. The same day of the robbery, Thomas viewed a photographic lineup containing six pictures and identified Jones as the robber. It was noted at trial that Jones was the only suspect in the lineup that was wearing a jacket with a collar. Photographs taken from the security camera videotape on the day of the robbery were also introduced into evidence, with Thomas identifying the robber in the photographs as Jones.
¶ 3. Officer Jackie Watson, with the Jackson Police Department, was called to the scene of the robbery, took a statement from Thomas, and observed the store surveillance tape during his visit to the store. According to Officer Watson’s trial testimony, Thomas described the suspect’s clothing as a blue-hooded sweatshirt and blue, white, and red pajama bottoms. Officer Watson logged the statement into evidence and informed the arriving detectives of the information he gathered from Thomas. Detective Reginald Cooper was involved in the robbery investigation and testified at trial. Detective Cooper testified that he was informed during the investigation that the suspect was described as wearing a dark pullover top with a “G” emblem or logo on the left side. As a result, Detective Cooper went to various gas stations throughout Jackson searching for the suspect. Detective Cooper and another detective approached an Exxon at the intersection of Ridgewood Road and County Line Road after spotting a person fitting the description of the suspect wearing an identical or similar pullover top to the one described by the clerk in the Super Saver robbery. Detective Cooper testified that he had observed a picture of the sweatshirt from the still photographs taken from the store security camera and had read the description of the sweatshirt. Detective Cooper further testified that he, wearing a police hat and vest, and the other detective approached the person fitting the description at the gas station and attempted to talk to him. At that point, Detective Cooper indicated that the person began running and dropped a knife in the process. Detective Cooper gave chase on foot and followed the man into the Hilton Hotel on County Line Road, where he found him inside a small room. Detective Cooper then placed the suspect under arrest, and at that time the suspect identified himself as Jones.
114. Detective David Domino participated in the investigation and also testified at trial. Detective Domino testified that he identified Jones as a suspect in the robbery and determined that Jones was staying in a room registered to Laverne Williams at the Parkside Inn Hotel on Interstate 55 in Jackson. Detective Domino testified that he spoke with Williams at the hotel and she allowed him to search the room on February 7, 2005. Detective Domino testified that he found clothing *1175 similar to the pants worn during the robbery in the room. He also testified that he found three packs of Newport cigarettes in the room.
¶ 5. At the close of the State’s case, Jones made a motion to dismiss, which the trial court denied. The jury returned a guilty verdict, and the trial court sentenced him to serve life as a habitual offender in the custody of the MDOC. It is from this conviction and sentence that Jones now appeals.
STANDARD OF REVIEW
¶ 6. “The standard of review for a speedy trial claim focuses on the fact question of whether the trial delay arose from good cause.” Flora v. State, 925 So.2d 797, 814(¶ 58) (Miss.2006) (citing DeLoach v. State, 722 So.2d 512, 516(¶ 12) (Miss.1998)). “If substantial credible evidence exists from which a finding of good cause may fairly have been made, we will leave the finding undisturbed.” Id. (citing Folk v. State, 576 So.2d 1243, 1247 (Miss.1991)).
DISCUSSION
Motion to Dismiss for Failure to Grant a Speedy Trial
¶ 7. Jones argues on appeal that he was denied his fundamental right to a speedy trial. Jones contends that the trial delay resulted in his inability to locate his girlfriend, Laverne Williams. Jones maintains that Williams remained in the area for several months following his arrest, but she later moved, which made all of his efforts to contact her regarding his defense futile. Jones claims that his right to a speedy trial has been violated, and the only remedy is dismissal of the charges. Jones points out he was arrested on February 6, 2005. He was indicted on April 12, 2005, and arraigned on May 13, 2005. Jones’s original public defender, Thomas Fortner, retired; thus, the original trial date was moved from August 25, 2005, to February 6, 2006. Jones points out he agreed to this order of continuance because of the impending retirement of his original public defender. Jones notes that the date of trial was moved again on two subsequent occasions, first on February 6, 2006, for a case that arose prior to his case, and a second time on May 8, 2006, for a case that arose after his own. Jones filed a motion to dismiss for failure to grant a speedy trial on March 24, 2006. Jones contends that 506 days passed from the date of his arrest, February 6, 2005, to the date of trial, July 24, 2006. Jones also argues that the delay caused him prejudice, as he was unable to secure Williams as a witness. Jones claims that Williams, his companion at the time of the robbery, could corroborate his defense that he was not at the scene of the crime on the morning of February 5, 2005. To support his argument, Jones claims that Williams left the Jackson area in March 2006 to move to Florida. After Williams’s move, Jones claims that efforts to reach her were unsuccessful.
¶ 8. The State argues in turn that the trial court correctly overruled Jones’s motion to dismiss for failure to grant a speedy trial. In support of this position, the State points out that most of the delay was attributable to an agreed continuance by Jones’s counsel and also to unavoidable delays due to crowded dockets. The State also alleges that Jones failed to assert his right to a speedy trial and failed to establish prejudice suffered by the delay.
¶ 9. “Defendants in criminal cases are guaranteed the right to a speedy trial by the sixth and fourteenth amendments to the United States Constitution and Article 3, Section 26 of the Mississippi Constitution of 1890.” Flora, 925 So.2d at 814(¶ 58). Jones claims that his constitu *1176 tional right to a speedy trial was violated and that the delay prejudiced his case.
¶ 10. In addition, Mississippi Code Annotated section 99-17-1 (Rev.2007) provides a defendant the right to a speedy trial. Unlike the constitutional right, the statutory right provides that an accused shall be tried within 270 days of his arraignment. Miss.Code Ann. § 99-17-1. Jones does not argue that his statutory right to a speedy trial was violated, presumably because the requirements of Mississippi Code Annotated section 99-17-1 would not be met when considering that Jones agreed to a 164-day continuance from August 5, 2005, to February 6, 2006, and also subtracting more than ninety days for the time period between his arrest and arraignment.
¶ 11. In Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 38 L.Ed.2d 101 (1972), the United States Supreme Court created a four-part test which Mississippi courts later adopted to determine whether a defendant’s constitutional right to a speedy trial had been violated. Smith v. State, 977 So.2d 1227, 1235(¶ 25) (Miss.Ct.App.2008). “An appellate court must consider: ‘[the] [IJength of the delay, the reason for the delay, the defendant’s assertion of his right, and prejudice to the defendant.’ ” Id. at 1235(¶ 25) (quoting Barker, 407 U.S. at 530, 92 S.Ct. 2182).

1. Length of Delay

¶ 12. In this appeal, Jones argues that the delay of 342 days from the date of arrest to the date of trial clearly exceeded the eight-month period and was presumptively prejudicial. In Mississippi, when considering a constitutional speedy-trial claim, a delay of eight months or more is presumed to be prejudicial. Brunson v. State, 944 So.2d 922, 926(¶ 12) (Miss.Ct.App.2006) (citing Spencer v. State, 592 So.2d 1382, 1387 (Miss.1991)).
¶ 13. The computation of time begins by looking first at Jones’s date of arrest, that date being February 6, 2005. Jones was indicted on April 12, 2005, and arraigned on May 13, 2005. Jones was first represented by Fortner, a Hinds County Public Defender, until Fortner retired on September 30, 2005. As a result of the retirement, Fortner filed an agreed order of continuance on September 20, 2005, and the trial was moved to February 6, 2006. Jones points out that the trial was again continued to May 8, 2006, and continued again to July 24, 2006, which was the actual trial date. Jones also contends that he did not agree to the second two continuances. Jones argues in his reply brief that contrary to the State’s interpretation, the continuances granted due to overcrowded dockets still weigh against the State. Further, Jones argues that when the record is silent as to the reason for the continuances, the delay should be counted against the State under Barker. Jones points out that there is only one agreed continuance in the file which covers the period from August 25, 2005 to February 6, 2006, totaling 164 days. While Jones acknowledges that one continuance was granted in favor of trying an older murder case, Jones argues that the second continuance, granted in favor of a case that arose after his own case, was improper.[1] Jones argues that the more recent case was given a special trial date merely because the complaining witness was a prominent Jackson business owner.
¶ 14. The State argues that the delay does not meet the presumptively prejudi *1177 cial 270-day time mark, but it was instead only a delay of 199 days. However, in making this argument, the State ignores the fact that a delay of eight months is presumed to be prejudicial in a constitutional speedy trial analysis. Further, the State argues that Jones’s trial was continued on May 8, 2006, because of a crowded docket and because of a special setting of an older case that was scheduled that date.[2] The State argues that since the record is silent as to whether the other two of the three continuances granted were agreed continuances, these continuances should not be counted against the State. The State further argues that the continuances granted due to a crowded docket and settings of older cases should not be attributable to delay by the State and should not be weighed against the State in the Barker analysis. These are arguments to consider when weighing the reason for the delay.
¶ 15. Here, while there is some disagreement as to whether the delay clearly exceeded the eight-month mark, further inquiry and analysis of the three other Barker factors is prudent. Therefore, we find that the length of the overall delay weights slightly in Jones’s favor.

2. Reason for Delay

¶ 16. While Jones concedes that the first agreed continuance should not count against the State, Jones argues that the other continuances should count against the State. The record is silent as to whether Jones agreed to the two subsequent continuances. Jones argues that the continuances were granted in order to give priority to the newer case of Jackson and was done solely for the convenience of the complaining witness. Jones does acknowledge that some of the delay was attributable to the crowded docket.
¶ 17. The State argues that there is no indication in the record as to whether the second two continuances were agreed to by Jones, but there is also no indication that Jones objected to the continuances. The State also argues that the continuances were granted due to the crowded docket and settings of older cases should not be weighed against the State under Barker.
¶ 18. “Delays caused by overcrowded dockets are not to be weighed heavily against the State.” State v. Magnusen, 646 So.2d 1275, 1282 (Miss.1994). The United States Supreme Court addressed this issue in Barker, stating that:
Closely related to length of delay is the reason the government assigns to justify the delay. Here, too, different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.
Barker, 407 U.S. at 581, 92 S.Ct. 2182. From the record before this Court, it does not appear that the delay was done for the purposes of hampering or delaying the defense. From this Court’s review of the record, much of the delay can be attributed to an overcrowded docket. Additionally, it appears that in the case that was moved ahead of Jones’s case, the judgment was rendered less than three months be *1178 fore the judgment in this case was handed down. That case was tried as a special setting and was not held so far in advance of this trial to raise the suspicion of impropriety in the delay. Additionally, Jones agreed to at least one of the granted continuances. This factor weighs slightly in Jones’s favor.

3. Jones’s Assertion of His Right

¶ 19. Jones argues that he asserted his right to a speedy trial by filing his motion to dismiss for failure to provide a fast and speedy trial and supporting memorandum on March 26, 2006. Jones concedes that he failed to mention in the motion the prejudice that resulted in his inability to find Williams, a crucial witness to his case. However, Jones contends that by filing this motion, he properly asserted his right to a speedy trial.
¶ 20. The State argues that Jones failed to properly assert his right to a speedy trial. The State contends that Jones did not demand a speedy trial; rather, he demanded a dismissal for failure to grant a speedy trial. Therefore, the State argues that this factor weighs in its favor.
¶ 21. The supreme court has previously held that “a defendant’s failure to assert his right to a speedy trial must be weighed against him.” Stark v. State, 911 So.2d 447, 452(¶ 26) (Miss.2005) (citing State v. Woodall, 801 So.2d 678, 684(¶ 21) (Miss.2001)). The Mississippi Supreme Court has also recognized in Woodall that “[t]he Supreme Court in Barker emphasized that ‘the defendant’s assertion of his speedy trial right ... is entitled to strong eviden-tiary weight in determining whether the defendant is being deprived of the right’ and that ‘failure to assert that right will make it difficult for a defendant to prove that he was denied a speedy trial.’ ” Woodall, 801 So.2d at 684(¶ 22) (quoting Barker, 407 U.S. at 581-32, 92 S.Ct. 2182). Further, the Mississippi Supreme Court “has previously held that ‘a demand for dismissal for violation of the right to speedy trial is not the equivalent of a demand for speedy trial. Such a motion seeks discharge not trial.’” Stark, 911 So.2d at 452(¶ 27) (quoting Perry v. State, 637 So.2d 871, 875 (Miss.1994)).
¶ 22. Jones filed a memorandum in support of the motion to dismiss the charges for failure to provide a fast and speedy trial on March 6, 2006. He filed a motion to dismiss for failure to provide a speedy trial on March 24, 2006. The circuit court overruled his motion to dismiss on July 25, 2006. In the present case, as was the case in Stark, the defendant filed a motion to dismiss for failure to grant a speedy trial, he did not move for or request a speedy trial itself. The supreme court in Stark found that this factor weighed in favor of the State. Stark, 911 So.2d at 452(¶ 27). Therefore, this factor weighs against Jones.
A Prejudice to Jones
¶ 23. Jones argues on appeal that his failure to receive a speedy trial prejudiced his defense because he was unable to locate his alibi witness, Williams. Jones contends that Williams moved to Florida in March 2006. Jones points out that after her move, he filed the motion to dismiss for failure to provide a speedy trial on March 26, 2006. Jones contends that he was unable to reach her after her move, which thereby severely prejudiced his defense at trial. Jones argues that this factor should weigh heavily against the State because he was unable to mount a complete defense at trial, and despite issuing a subpoena, he was unable to procure Williams for trial.
¶24. The State argues that Jones is unable to establish prejudice. The State contends that Williams’s earlier statement *1179 to police attributed the robbery to Jones and that he was unable to offer any exculpatory information that Williams might provide. The State also points out that Jones’s counsel did not attempt to contact Williams until five days prior to trial. Further, the State argues that Jones did not mention the loss of Williams as a witness in his motion to dismiss, but merely raised that issue ore tenus on the date of trial.
¶ 25. The Mississippi Supreme Court has acknowledged that “the Barker Court identified three interests protected by the right to a speedy trial to be considered when determining whether the defendant has been prejudiced by the delay in bringing him or her to trial.” Flora, 925 So.2d at 818. An appellate court must consider the following three interests: “(I) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.” Barker, 407 U.S. at 532, 92 S.Ct. 2182. “Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.” Id. An appellate court will consider “whether witnesses have died or become unavailable ... so that the accused is at a disadvantage which would not have attended him at a prompt trial.” Flora, 925 So.2d at 818(¶ 68) (citing Jaco v. State, 574 So.2d 625, 632 (Miss.1990)). While Jones contends that Williams would serve as an alibi witness at trial, very few attempts were made by Jones in order to procure a statement from Williams that would exonerate him. At trial, the State pointed out that the police obtained a statement from Williams which implicated Jones in the armed robbery. The State was also willing to stipulate as to Williams’s earlier statement to the police. Since Williams made an earlier statement to police which implicated Jones rather than exonerated him, it is hard to see how her unavailability for trial caused Jones actual prejudice. Therefore, we find this factor weighs against Jones.
¶26. In summary, the length of the delay required this Court to look at all four factors involving a speedy trial violation. The length of the delay and reasons for the delay weigh slightly in Jones’s favor, in that, much of the delay was due to an overcrowded docket. Weighed against the delay is the fact that Jones failed to request a speedy trial; therefore, he did not assert his right. Finally, Jones failed to establish that he was prejudiced because he was unable to locate Williams to testify at trial. Her earlier statement to police served to implicate Jones rather than exonerate him as Jones claimed. Upon examining the four factors, we find no error with the circuit court’s decision to deny Jones’s motion to dismiss for failure to grant a speedy trial. Accordingly, this issue is without merit.
¶ 27. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT OF CONVICTION OF ARMED ROBBERY AND SENTENCE AS A HABITUAL OFFENDER OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ROBERTS, CARLTON AND MAXWELL, JJ„ CONCUR.

. Jackson v. State, 5 So.3d 1144 (Miss.Ct.App.2008). Jaclcson involved an armed robbery that occurred on March 14, 2005, after the armed robbery occurred in this case, and judgment was rendered on May 5, 2006.

. The State's brief does not specify which older case was heard in a special setting on that date, but it is likely that the State is actually referring to the more recent Jackson case with which Jones takes issue.